STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

 v.

Dale H. DAVIDSON, Defendant-Appellant.

Supreme Court

*No. 98–0130–CR. Oral argument December 3, 1999.—Decided July 11, 2000.*

2000·WI 91

(Also reported in 613 N.W.2d 606.)

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *Jerome F. Buting, Pamela Moorshead*, and *Buting & Williams, S.C.*, Brookfield, and oral argument by *Jerome F. Buting*.

Amicus Curiae brief by *Dean A. Strang* and *Fitzgerald & Strang, S.C.*, Milwaukee, for Wisconsin Association of Criminal Defense Lawyers.

¶ 1. JON P. WILCOX, J. The State of Wisconsin seeks review of a published decision of the court of appeals, *State v. Davidson*, 222 Wis. 2d 233, 589 N.W.2d 38 (Ct. App. 1998), which reversed Dale Davidson's conviction for second-degree sexual assault of his thirteen-year-old niece on the grounds that the trial court improperly admitted evidence of the defendant's prior conviction for child sexual assault.

¶ 2. In a jury trial in the Circuit Court for Adams County, Judge Richard O. Wright, Dale Davidson was convicted of assaulting his niece, Tina H. During trial, the circuit court permitted the State to introduce evidence of Davidson's 1986 conviction for sexual assault of a six-year-old girl in its case-in-chief. Upon his con-

540

viction, Davidson appealed, arguing that the admission of his prior conviction constituted an erroneous exercise of discretion and that such error was not harmless. Davidson also argued that prosecutorial misconduct during closing statements warranted a new trial.

¶ 3. The court of appeals determined that under Wis. Stat. § (Rule) 904.04(2)(1993–94),[1] the trial court had erroneously exercised its discretion when it admitted evidence of Davidson's prior conviction. *Davidson*, 222 Wis. 2d at 250–54. Because it reversed his conviction on this ground, the court of appeals did not reach Davidson's prosecutorial misconduct claim.

¶ 4. The State petitioned this court for review. The State articulated several reasons that review was warranted, including: (1) to clarify how courts should apply the three-step test for admissibility of other acts evidence articulated in *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998); (2) to clarify how courts should apply the "greater latitude rule," which permits a greater latitude of proof with regard to other acts evidence in sexual assault cases, while performing the *Sullivan* analysis; and (3) to clarify what degree of similarity must exist between the uncharged and charged offenses in order for other crimes evidence to be admissible.

¶ 5. We accepted review. We now hold that, applying the three-step *Sullivan* analysis together with the greater latitude rule that is well established in Wisconsin law, the admission of evidence of Davidson's prior conviction did not constitute an erroneous exercise of discretion. We also conclude that the defendant waived his objection to the prosecutor's statements during closing arguments when he failed to request a

---

[1] Subsequent references to the Wisconsin Statutes refer to the 1993–94 volumes unless otherwise indicated.

mistrial before the jury returned its verdict. We therefore reverse the decision of the court of appeals and reinstate the judgment of the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

¶ 6. This case arose after Davidson's niece, Tina H., complained that he had sexually assaulted her during a camping trip in September 1995. Tina, who is the daughter of Davidson's wife's sister, accompanied Davidson, his wife, and their three sons, ages 9, 11, and 13, on a weekend camping trip in the Davidsons' Winnebago camper. On Sunday night, after she returned home from the camping trip, Tina first spoke to a close friend on the phone and disclosed the incident. Tina then told her mother that Davidson had sexually assaulted her.

¶ 7. Tina gave the following account of the assault. She reported that on Saturday evening, Davidson and his wife had allowed Tina and the three boys to drink a small amount of homemade wine while sitting around the campfire. Tina stated that while they were seated around the campfire, Davidson had given her more wine from his own cup until his wife told him to stop. Later, while Davidson and his wife stayed at the campfire, Tina and the boys went to bed. The boys slept in a bed over the cab at the front of the camper, while Tina slept in the middle of the camper on a table that folded down into a bed. When they went to bed, Davidson and his wife slept in a bedroom area at the rear of the camper.

¶ 8. Tina stated that at some time during the night, Davidson woke her and asked her to drink some more wine. She agreed at first but then told Davidson

that she felt sick. Tina reported that she then fell back to sleep, but that Davidson again woke her and told her to lie on her back so she would not get sick. At some point, she heard the curtains being drawn around the other sleeping areas. The next time she awoke, Davidson had pulled up her shirt and bra and was licking her breasts. She rolled over, turning away from Davidson. She stated that this same behavior occurred more than once during the night, but that she could not remember exactly when or how often. The last time she awoke, Davidson had unbuttoned and unzipped her pants and was feeling her vagina.[2] When she awoke and lifted her head, Davidson zipped her pants and left.

¶ 9. After Tina reported this assault, her parents contacted the police. Davidson was subsequently charged with second-degree sexual assault of a child as a repeater.

## B. TRIAL COURT PROCEEDINGS

¶ 10. Before Davidson's trial on this charge, the State filed a motion in limine seeking to introduce evidence of Davidson's prior conviction for first-degree sexual assault of a six-year-old girl, Cindy P., in 1986.[3]

---

[2] When she first reported the assault to her mother and to the police, Tina did not report that Davidson had touched her vagina. However, Tina testified at trial that this touching had occurred, and the close friend to whom Tina spoke on Sunday night stated that Tina admitted this detail to her in their initial conversation.

[3] Initially, the State also sought to introduce evidence that another complaint had been filed against Davidson charging him with assaulting a four-year-old girl, L.W., in December 1985. However, the State later abandoned that part of its motion and sought only to introduce Davidson's conviction for assaulting Cindy P.

The prior assault occurred while Davidson was attending church in Park Falls, Wisconsin. During the services, Cindy P. went to get a drink of water at the drinking fountain. The drinking fountain was located next to the men's restroom and near a nursery in the lower level of the church. While Cindy P. was standing at the fountain, Davidson approached her, put his hands inside her underwear, and touched her buttocks and front pubic area. Cindy P. told Davidson that she had to go to the bathroom and left the area. She later reported the incident to her mother, and Davidson was charged with first-degree sexual assault of a child. He pled guilty and was sentenced to two years in prison.

¶ 11. The State's motion in limine sought to admit evidence of Davidson's assault of Cindy P. under Wis. Stat. § (Rule) 904.04(2)[4] to establish intent, motive, plan, and identity, and to fully present the State's case.

¶ 12. Before deciding the motion, the trial court heard extensive arguments on the admissibility of the evidence in the form of memoranda from each side, two pretrial hearings, and a discussion immediately before trial.

¶ 13. In its memorandum opposing the motion, the defense argued that evidence of Davidson's assault of Cindy P. was inadmissible under Wis. Stat. § (Rule) 904.04(2) because it was not material to any fact of consequence in the case. The defense contended that

---

[4] Wisconsin Stat. § (Rule) 904.04(2) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Davidson's guilty plea was not sufficient to put intent, motive, plan, or identity in issue. The defense further argued that the evidence was inadmissible under Wis. Stat. § (Rule) 904.03[5] because the danger of unfair prejudice posed by the evidence outweighed its probative value.

¶ 14. In its responsive memorandum, the State argued that Wisconsin precedent[6] established that a "greater latitude of proof" applies in sexual assault cases. The State contended that under these precedents the evidence was relevant and admissible to prove both motive and intent under Wis. Stat. § (Rule) 904.04(2). The State also argued that the probative value of the evidence outweighed any potential for unfair prejudice under Wis. Stat. § (Rule) 904.03.

¶ 15. At the initial hearing on this motion, the trial judge noted that "the similarity in circumstances [between the Cindy P. assault and the charged offense] are [sic] possibly striking," but asked the State to explain what purpose the evidence could serve at trial "other than to show that the defendant, in fact, did it again?" The State responded that the evidence should be admitted "not to show that he did it before, he did it

---

[5] Wisconsin Stat. § (Rule) 904.03 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[6] The State specifically cited *State v. Plymesser*, 172 Wis. 2d 583, 597–98, 493 N.W.2d 367 (1992); *State v. Friedrich*, 135 Wis. 2d 1, 27–35; 398 N.W.2d 763 (1987); *Proper v. State*, 85 Wis. 615, 55 N.W.2d 1035 (1893); *State v. Tabor*, 191 Wis. 2d 482, 488–91, 529 N.W.2d 915 (Ct. App. 1995); and *State v. Parr*, 182 Wis. 2d 349, 360, 513 N.W.2d 647 (Ct. App. 1994).

again, but [because] who would believe a person would do something like this. What is their motive; what is their motive to do something like that?" The State also argued that the evidence might be relevant to establish opportunity or plan, to refute Davidson's contention that the alleged assault could not have taken place in the small camper while the rest of the family slept nearby.

¶ 16. The judge indicated that he believed that the evidence might be admissible to establish opportunity, but doubted that it would be admissible to establish motive or plan. In response, the defense argued that the two incidents were not very similar because no one else was present in the basement when Davidson assaulted Cindy P. The judge acknowledged the defense's concern that the evidence would establish propensity rather than opportunity. However, the judge decided to conditionally admit the evidence to establish opportunity, provided that the State was able to establish proof of the similarities between the incidents. The prosecutor subsequently made an offer of proof that described the circumstances of the Cindy P. assault in more detail.

¶ 17. At the final pretrial hearing, the judge again heard arguments on the motion. The State indicated that it sought to introduce the evidence in order to establish the defendant's plan, scheme, and motive, and that "[t]he opportunity [to accomplish the assault] was created through [the defendant's] plan or through his method of sexually assaulting these young girls. . . ." The State compared "the camping trip, the camper itself, the structure itself, and to the structure of the church, the fact that people were present in both of them."

¶ 18. After listening to the State's argument, the court reiterated its previous determination. The court pointed out that one of the similarities between the incidents was the possibility that the defendant would be discovered during the assault. The court indicated that if evidence had been offered merely to establish motive, its prejudicial effect would outweigh its value as relevant evidence, but that the evidence was admissible to establish plan, scheme, or opportunity.

¶ 19. Without waiving objection to admission of the evidence, the defense requested a ruling from the court limiting the arguments that the State could make regarding the defendant's motive. The defense asked the court to rule that the State could only argue that the defendant had a motive to assault young girls and not that he had a more particular motive to assault young girls in situations in which there was a danger that he would be caught. The defense contended that this latter argument would be improper and unfairly prejudicial because it "goes to pure propensity" and would have to be supported by expert testimony establishing that individuals with such motivations do exist and that the defendant is such an individual.

¶ 20. The defense also suggested that, if it were to be introduced to the jury, the evidence should be put in the form of a stipulation of facts. The defendant requested that the stipulation be drafted so as not to reveal the fact that the Cindy P. assault took place in a church, to eliminate any undue prejudicial effect.

¶ 21. The trial court indicated that the evidence was admissible, with limitations. The evidence would be introduced in the form of stipulation of facts and would be accompanied by a cautionary instruction to the jury. The court suggested that the parties draft the cautionary instruction and draft the stipulation of the

facts, eliminating any reference to the fact that the assault occurred in a church.

¶ 22. After these matters were discussed, the defense reiterated its request for a ruling that it would be improper for the State to argue that the defendant had a particular motive to assault young girls under circumstances in which he might be caught. After hearing from both sides, the court gave the following ruling:

> [The State] is not going to be allowed to make an argument that would be an argument of propensity, plan, or scheme. He is going to have to stick to it, if that's what he is introducing it for, but it can also be motive, but he is able to argue that, but the court–the only reason the court disparaged the motive part of it, is that if the only part, the only exception that was being argued by State, the court wouldn't be allowing it in, but I think with that, we have understanding on that.

In addition, at the State's prompting, the court specifically noted that it had determined that the probative value of the evidence for the limited purposes for which it would be admitted outweighed its prejudicial effect.

¶ 23. On the first day of trial, the State presented the parties' stipulation[7] as well as a proposed jury

---

[7] The stipulation stated:

The district attorney and the attorney for defendant have stipulated or agreed to the existence of certain facts, and you must accept these facts as conclusively proved. In this case, the district attorney and the defendant's attorney have stipulated to the following facts:

1. On December 22, 1985, [Cindy P.'s mother], dob: 09–17–54, attended a gathering in a public building in Price County, Wisconsin, with her family.'[Cindy P.] dob: 10–28–79, age six (6), her daughter, was present with the family.

instruction to the court. The defendant objected to the proposed instruction because it allowed the jury to consider the evidence for the purpose of establishing motive. The defense argued that this contradicted the court's previous ruling.

¶ 24. The court explained that it had not ruled that the evidence could not be admitted for the purpose of establishing motive. Instead, the court had determined that the evidence would be unduly prejudicial if it were offered solely for the purpose of establishing motive. However, because the evidence was offered not merely to establish motive but also to establish plan or scheme, the applicable purpose of motive could also be included in the instruction.

¶ 25. The cautionary instruction that the court approved read as follows:

2. The building has a main entrance allowing entry to the top floor where the gathering was held. There are two stairways that allow access to the lower level where the restrooms and another room are located. At the bottom of the steps the water bubbler is located next to the men's restroom. Another service door allows entry to the lower level directly where the water bubbler is located.

3. Approximately 150 people attended the gathering on the upper level. There were additional adults and children gathered in the room on the lower level.

4. During the gathering, [C.P.] left her family to get a drink of water at the bubbler located in the lower level next to the men's restroom.

5. While getting a drink of water, the defendant approached [C.P.]. The defendant put his hands inside [C.P.]'s underwear and touched [C.P.]'s buttocks and front pubic area. [C.P.] said she had to go to the bathroom and left the area.

6. As a result of this conduct, the defendant plead [sic] guilty and was convicted of first degree sexual assault of [C.P.] on February 7, 1986.

Evidence has been received regarding a crime committed by the defendant for which the defendant is not on trial.

Specifically, evidence has been received that the defendant in 1985 did have sexual contact with Cindy P., age six. If you find that this conduct did occur, you should consider it only on the issue(s) of motive and plan or scheme.

You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case. The evidence was received on the issue(s) of motive, that is, whether the defendant has a reason to desire the result of the crime, and plan or scheme, that is, whether such other conduct of the defendant was part of a design or scheme that led to the commission of the offense charged.

You may consider this evidence only for the purpose(s) I have described, giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person or that he has a propensity to commit such offenses and for that reason is guilty of the offense charged.

¶ 26. Trial proceeded. At the close of the State's case-in-chief, the prosecutor read the stipulation and the court read the cautionary instruction to the jury.[8]

¶ 27. In its case, the defense challenged the credibility of Tina's story by presenting evidence suggesting that it was unlikely such an assault could

---

[8] The court read the instruction to the jury both immediately after the evidence was introduced and during the closing instructions. The transcript indicates that the court's reading of the instruction differed in minor respects from the proposed instruction.

have taken place in the small confines of the camper. The defense also presented evidence that there was hostility between Tina's family and the Davidson family and that soon after the assault Tina's father had talked about suing the Davidsons.

¶ 28. During closing arguments, the prosecutor compared the Cindy P. assault with the assault alleged by Tina, arguing that the two incidents were similar. The prosecutor also made two arguably improper remarks during closing arguments, to which the defense objected. The court sustained both objections, but the defense did not move for a mistrial at that time.

¶ 29. The jury found Davidson guilty of second-degree sexual assault of a child. Davidson was sentenced to twelve years in the intensive sanctions program, with two years of confinement.

## C. COURT OF APPEALS PROCEEDINGS

¶ 30. Davidson appealed, arguing that his conviction should be reversed because evidence of his prior conviction was improperly admitted and because the prosecutor made improper statements during the closing arguments.[9]

¶ 31. On appeal, the court of appeals followed the three-step analytic framework set forth in *Sullivan*, 216 Wis. 2d at 780–81, which asks (1) whether the evidence is offered for a proper purpose; (2) whether the evidence is relevant; and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the jury, or

[9] Before the court of appeals, the defendant also argued that the trial court improperly permitted the State to present rebuttal evidence. However, the defendant has not raised that issue before this court.

needless delay. *See Davidson*, 222 Wis. 2d at 244–54. The court also acknowledged that under Wisconsin law, a "greater latitude rule" applies to the admission of other acts evidence in sexual assault cases. *Id.* at 243. However, the court concluded that this rule applies only to the first step of the three-step analysis. *Id.* at 251.

¶ 32. Applying the greater latitude rule to the first step, the court of appeals decided that the evidence was offered for a proper purpose. *Id.* Next, the court considered whether the second step of the analysis had been satisfied and determined that the trial court had not adequately articulated its reasoning with regard to the second step. *Id.* at 252. Reviewing the question independently, the court determined that the dissimilarities between the Cindy P. assault and the Tina H. assault outnumbered the similarities, and that evidence of the Cindy P. assault therefore was not probative of Davidson's motive, opportunity, or plan. *Id.* at 253. Because the court decided that the evidence was neither probative nor material, it did not need to reach the third step of the analysis, that is, whether the danger of unfair prejudice outweighed the probative value. *Id.* The court then turned to the defendant's argument that the admission of the evidence was not harmless error; because the State did not respond to this argument, the court determined that the State had acquiesced in the conclusion that the error was prejudicial. *Id.* at 253–54. Accordingly, the court of appeals reversed the judgment of conviction entered in the circuit court. *Id.* at 254. The State petitioned for review.

## II. ADMISSIBILITY OF OTHER CRIMES EVIDENCE

¶ 33. In this review, the first question we must examine is whether the circuit court erroneously exercised its discretion when it admitted evidence of the Cindy P. assault at the defendant's trial on the charge of assaulting Tina H.

### A. GENERAL PRINCIPLES OF LAW

¶ 34. The general legal principles surrounding the admissibility of evidence of a defendant's other crimes are familiar and well established. The rule that specifically governs the admissibility of such evidence is Wis. Stat. § (Rule) 904.04(2). It provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The party offering other crimes evidence must establish that the evidence is admissible for a proper purpose under § (Rule) 904.04(2). Like all evidence, other crimes evidence also must be relevant under Wis.

Stat. § (Rule) 904.01,[10] and is subject to the balancing test of Wis. Stat. § (Rule) 904.03.[11]

¶ 35. The three-step framework set forth in *Sullivan* is a restatement of the legal principles contained in these rules:

1. Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2)?

2. Is the other acts evidence relevant under Wis. Stat. § (Rule) 904.01?

3. Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice, confusion, or delay under Wis. Stat. § (Rule) 904.03?

We have sometimes described the same analysis in two steps, asking (1) whether the other crimes evidence is offered for one of the purposes set forth in Wis. Stat. § (Rule) 904.04(2), and (2) whether the danger of prejudice from the admission of such evidence outweighs its probative value. *Sullivan*, 216 Wis. 2d at 771 n.3. *See State v. Plymesser*, 172 Wis. 2d 583, 592–93, 493 N.W.2d 367 (1992); *State v. Friedrich*, 135 Wis. 2d 1, 19, 398 N.W.2d 763 (1987); *State v. Fishnick*, 127

---

[10] Wisconsin Stat. § (Rule) 904.01 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[11] Wisconsin Stat. § (Rule) 904.03 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Wis. 2d 247, 254, 378 N.W.2d 272 (1985). The two-step analysis implicitly includes a determination of whether the evidence is relevant to an issue in the case. *Sullivan*, 216 Wis. 2d at 771 n.3; *Friedrich*, 135 Wis. 2d at 19; *Fishnick*, 127 Wis. 2d at 254.

¶ 36. This is the general framework that governs the admissibility of other crimes evidence in all Wisconsin cases. However, alongside this general framework, there also exists in Wisconsin law the longstanding principle that in sexual assault cases, particularly cases that involve sexual assault of a child, courts permit a "greater latitude of proof as to other like occurrences." *Plymesser*, 172 Wis. 2d at 597–98; *Friedrich*, 135 Wis. 2d at 19; *Fishnick*, 127 Wis. 2d at 257; *Day v. State*, 92 Wis. 2d 392, 404, 284 N.W.2d 666 (1979); *State v. Tarrell*, 74 Wis. 2d 647, 658, 247 N.W.2d 696 (1976), *withdrawn in part by Fishnick*, 127 Wis. 2d at 255–56; *Hendrickson v. State*, 61 Wis. 2d 275, 279, 212 N.W.2d 481 (1973).

¶ 37. This "greater latitude rule" was first articulated in *Proper v. State*. The defendant in *Proper* was convicted of sexually assaulting a ten-year-old girl, Clara. *Proper v. State*, 85 Wis. 615, 624–25, 55 N.W.2d 1035 (1893). Clara was placed in the defendant's home after her father died and her mother was unable to care for her. *Id.* at 617. Other young girls also lived in the defendant's home, and Clara sometimes shared a bed with one of the other girls. *Id.* at 618–19. The case centered on Clara's allegation that the defendant had sexually assaulted her in her bedroom on several occasions. *Id.* At the trial, the circuit court allowed the jury to hear the testimony from another girl, Emma, that the defendant on a separate occasion had entered the girls' bedroom and sexually assaulted Emma while both girls were in the bed. *Id.* at 621–22.

¶ 38. In reviewing the admission of Emma's testimony to the jury, this court concluded that "[the defendant's] conduct on this occasion was corroborative of the evidence of the prosecutrix in respect to other indecent or criminal assaults, such as are charged in the information, and would tend to sustain and render more credible her evidence of other such occurrences." *Id.* at 629. The court also stated that the defendant's actions in entering the room where both girls were sleeping and getting into the bed:

> [M]ay fairly be considered to have been for the purpose of renewing his former attempts to gratify his brutal passions, and would have a material bearing in support of the testimony of the prosecutrix both as to previous and subsequent assaults upon her, and would be admissible for that purpose; and that all that took place as a part of the transaction at that time would be competent.

*Id.* Pointing out that a "greater latitude of proof as to other like occurrences is allowed in cases of sexual crimes," the court determined that it was within the trial court's discretion to admit the evidence. *Id.* at 630–31.

¶ 39. Later cases reaffirmed the application of the "greater latitude rule" to the admissibility of other crimes evidence in sexual assault cases. In *Hendrickson*, the defendant challenged his convictions for sexually assaulting his daughter on the ground that the trial court improperly admitted evidence of the defendant's prior sexual assaults against the same daughter and two other daughters. *Hendrickson*, 61 Wis. 2d at 276. This court affirmed the convictions, stating that " '[a] greater latitude of proof as to other like occurrences' is clearly evident in Wisconsin cases

dealing with sex crimes, particularly those involving incest and indecent liberties with a child." *Id.* at 279.

¶ 40. The State did not rely on the greater latitude rule in *Fishnick*, which involved the admission of evidence that the defendant attempted to lure a thirteen-year-old girl into his trailer one week before he assaulted a three-year-old girl. *Fishnick*, 127 Wis. 2d at 257. Nonetheless, this court specifically reaffirmed its commitment to the rule and explained that one of the reasons behind the rule is the need to corroborate the victim's testimony against credibility challenges. *Id.*

¶ 41. In *Friedrich*, the defendant appealed his conviction for sexually assaulting his niece on the grounds that the trial court erred by admitting testimony that the defendant, four and seven years before the charged assault, committed two other uncharged sexual assaults. *Friedrich*, 135 Wis. 2d at 17–18. This court concluded that because of the similarities between the charged crime and the other crimes, the other crimes evidence was admissible and relevant and that its probative value outweighed any prejudicial effect. *Id.* at 24. The court confirmed the vitality of the greater latitude rule, noting that it "is particularly appropriate in both incest cases and cases involving indecent liberties with children." *Id.* at 25.

¶ 42. In response to the dissent's contention that the court had approved the admission of evidence that was only relevant to establish the defendant's propensity, this court countered that the evidence was relevant because:

> To a person of normal, social and moral sensibility, the idea of the sexual exploitation of the young is so repulsive that it's almost impossible to believe that none but the most depraved and degenerate would

commit such an act. The average juror could well
find it incomprehensible that one who stands before
the court on trial could commit such an act.

*Id.* at 27–28. The court acknowledged that the evidence
also has some unavoidable potential to prove propen-
sity; however, the court emphasized that the
defendant's prior actions were also relevant to estab-
lish the defendant's plan, motive, or scheme to commit
the crime charged at trial. *Id.* at 28–29. The court sug-
gested that the difficulty sexually abused children
experience in testifying, and the difficulty prosecutors
have in obtaining admissible evidence in such cases,
are among the reasons supporting the more liberal
standard of admissibility in child sexual assault cases.
*Id.* at 30–33 and n.17. The court concluded that inter-
preting Wis. Stat. § (Rule) 904.04(2) more liberally in
sexual assault cases is "in conformity to both the letter
and spirit of the statute in question and promotes the
ends of justice." *Id.* at 35.

¶ 43. In the recent case of *Plymesser*, this court
again applied the greater latitude rule to a determina-
tion of whether other crimes evidence was properly
admitted in a child sexual assault case. At the defen-
dant's trial for sexually assaulting his daughter's
thirteen-year-old friend in December 1989, the circuit
court permitted the State to introduce evidence of the
defendant's 1977 conviction for assaulting a friend's
seven-year-old daughter. *Plymesser*, 172 Wis. 2d at
586–87. The defendant challenged his conviction in
part on the ground that the admission of this evidence
was improper. *Id.* at 585. This court determined that
the evidence was admissible to establish the defen-
dant's motive. *Id.* at 593–94. Because the incidents
bore striking similarities, and in light of the trial
court's efforts to limit the prejudicial effect of the evi-

dence, the court also concluded that the danger of unfair prejudice did not outweigh the probative value of the evidence. *Id.* at 597.

¶ 44. Thus, this court has consistently held that in sexual assault cases, especially those involving crimes against children, the greater latitude rule applies together with the *Sullivan* framework. Like many other U.S. jurisdictions,[12] Wisconsin courts per-

---

[12] *See, e.g., Ex parte Register*, 680 So. 2d 225, 227 (Ala. 1994) (noting that courts are more willing to admit evidence of other crimes in sex crime cases); *State v. Roscoe*, 910 P.2d 635, 642 (Ariz. 1996)(stating that Arizona courts recognize a specific exception to the rule against admissibility of other crimes evidence "bad acts involving 'sexual aberration' " and that sexual assaults on a minor are always considered aberrant); *State v. Tolman*, 828 P.2d 1304, 1308–10 (Idaho 1992)(discussing the justification for permitting the introduction of other crimes evidence in child sexual abuse cases in order to corroborate testimony); *Thacker v. Commonwealth*, 816 S.W.2d 660, 662 (Ky. App. 1991)(recognizing that under Kentucky Supreme Court precedent, the familiar rules governing the admission of other crimes evidence are applied "in an unusual manner" in child sexual assault cases); *State v. Miller*, 718 So. 2d 960, 962–65 (La. 1998) (explaining that Louisiana has followed a national trend towards broader admissibility of other crimes evidence in child sexual abuse cases); *State v. Wermerskirchen*, 497 N.W.2d 235, 240–42 (Minn. 1993)(explaining that in Minnesota, other crimes evidence is admissible to establish a "common scheme or plan" in sex abuse cases and that such evidence may be admitted to establish the commission of the charged crime); *State v. Stephens*, 466 N.W.2d 781, 785–86 (Neb. 1991)(stating that evidence of other similar sexual conduct has independent relevancy in cases involving sexual crimes); *Keeney v. State*, 850 P.2d 311, 316–17 (Nev. 1993) (explaining that in cases involving sex offenses against children, the court applies a more liberal standard to the admission of other crimes evidence); *State v. Frazier*, 476 S.E.2d 297, 300

mit "a more liberal admission of other crimes evidence" in sexual assault cases than in other cases. *Friedrich,* 135 Wis. 2d at 31.

---

(N.C. 1996)("This Court has been liberal in allowing evidence of similar offenses in trials on sexual crime charges."); *State v. Tobin,* 602 A.2d 528, 531–32 (R.I. 1992)(noting that in sexual assault cases evidence of other crimes is admissible to show the defendant's lewd disposition or intent); *State v. Edward Charles L., Sr.,* 398 S.E.2d 123, 132–33 (W. Va. 1990)(holding that other crimes evidence may be admitted in cases involving child sexual assault in order to establish the perpetrator's lustful disposition); *Gezzi v. State,* 780 P.2d 972, 974–76 (Wyo. 1989) (recognizing that the exceptions to the rule that other crimes evidence is generally inadmissible have been treated expansively in sexual assault cases, consistent with "that nationally predominant trend").

In addition, under the recently enacted Federal Rule of Evidence 413, other crimes evidence of sexual assault "is admissible, and may be considered for its bearing on any matter to which it is relevant" in criminal cases involving sexual assault. Fed. R. Evid. 413. The same is true of other crimes evidence of child molestation in criminal cases involving child molestation. Fed. R. Evid. 414.

With regard to the admissibility of other crimes evidence in sexual assault cases, Wigmore's treatise on evidence provides this commentary:

> The committing of a single previous rape. . .may not in itself indicate [a design to commit rape]. . . . Nevertheless, a single previous act, even upon another woman, *may*, with other circumstances, give strong indication of a design (not a disposition) to rape; . . . .
>
> Courts have shown altogether too much hesitation in receiving such evidence. Even when rigorously excluded from any bearing it may have upon character. . ., it may carry with it great significance as to a specific design or plan to rape. There is no reason why it should not be received when it does convey to the mind, according to the ordinary logical instincts, a clear indication of such a design. There is room for much more common sense than appears in the majority of the rulings.

¶ 45. Although the defendant acknowledges the existence of the greater latitude rule in Wisconsin, he argues that the rule applies only to the first step of the three-step analysis set forth in *Sullivan*. To support this contention, the defendant relies on this court's statement in *Hendrickson* that the greater latitude rule is:

> [N]ot so much a matter of relaxing the general rule that it is not competent in a prosecution for one crime to introduce evidence of other offenses as it is a matter of placing testimony concerning other acts or incidents within one of the well established exceptions to such rule. . . .

*Hendrickson*, 61 Wis. 2d at 279 (footnotes omitted).

¶ 46. We cannot agree with the defendant that the greater latitude rule is only applicable to the first prong of the *Sullivan* analysis. We find nothing in our precedents to support such a limitation on the rule's applicability.

¶ 47. The language the defendant points to in *Hendrickson* does not support the defendant's contention when read in context. *Hendrickson* did not separately articulate the three prongs of the *Sullivan* analysis, but instead conducted its entire analysis in terms of whether the evidence fell within one of the exceptions to the rule against introducing evidence of other crimes or acts under Wis. Stat. § (Rule) 904.02. *See id.* at 279–82. The court's holding was that the evidence at issue fell within "(1) the general scheme or plan; and (2) the proof of motive or intent exceptions to the general rule against admitting testimony in a crim-

---

2 John Henry Wigmore, *Evidence in Trials at Common Law*, § 357 (Chadbourn Rev. 1979).

inal prosecution concerning prior crimes, incidents or occurrences." *Id.* at 282.

¶ 48. Thus, it appears that in *Hendrickson*, analysis of the second and third prongs of the *Sullivan* framework was implicit in the analysis of whether the evidence fell within one of the "exceptions" set forth in Wis. Stat. § (Rule) 904.04(2). In that context, the court's statement that the greater latitude rule "is a matter of placing testimony concerning other acts or incidents within one of the well established exceptions to such rule," *Hendrickson*, 61 Wis. 2d at 279, does not indicate that the greater latitude rule only applies to the first step in *Sullivan*.

¶ 49. In addition, the authority that *Hendrickson* cited in support of the quoted language also fails to support the defendant's position. After *Hendrickson*'s statement that the greater latitude rule is "not so much a matter of relaxing the general rule that it is not competent in a prosecution for one crime to introduce evidence of other offenses," a footnote appears. *Hendrickson*, 61 Wis. 2d at 279 and n.9. The footnote quotes *State v. Midell* and states:

> 'This is a familiar problem and in *Whitty v. State*, this court thoroughly reexamined the fundamental rules underlying the admissibility of evidence of prior crimes, incidents or occurrences. The court made it clear that such evidence is not admitted for purposes of proving general character, criminal propensity or general disposition on the issue of guilt or innocence. . . .'

*Id.* (quoting *State v. Midell*, 39 Wis. 2d 733, 737, 159 N.W.2d 614 (1968)). Thus, *Hendrickson* did not limit the greater latitude rule to a single step of the analysis; it merely clarified that even though greater latitude

applies, it does not overcome the prohibition against admitting other crimes evidence to establish a defendant's general character, disposition, or criminal propensity.

¶ 50. We also observe that neither *Friedrich* nor *Plymesser* limited the application of the greater latitude rule to the first step of *Sullivan*. Instead, both cases described the rule as a general principle governing the analysis of whether the other crimes evidence at issue was properly admitted in the context of a sexual assault case. *See Friedrich*, 135 Wis. 2d at 19 (indicating that the greater latitude rule is an additional principle affecting the exercise of trial court discretion in rulings on the admissibility of other crimes evidence in child sex crime cases); *Plymesser*, 172 Wis. 2d at 597–98 (refusing to reject the greater latitude standard but explaining that it does not relieve the court of the duty to ensure that other acts evidence is offered for a proper purpose and is admissible under the other rules of evidence).

¶ 51. We conclude that in sexual assault cases, especially those involving assaults against children, the greater latitude rule applies to the entire analysis of whether evidence of a defendant's other crimes was properly admitted at trial. The effect of the rule is to permit the more liberal admission of other crimes evidence in sex crime cases in which the victim is a child.

¶ 52. Although the greater latitude rule permits more liberal admission of other crimes evidence, such evidence is not automatically admissible. *See, e.g., Friedrich*, 135 Wis. 2d at 18–19 (holding that at the defendant's trial for sexually assaulting a fourteen-year-old girl, evidence that the defendant made sexual

advances toward an eighteen-year-old employee was inadmissible because it was more prejudicial than probative); *Fishnick*, 127 Wis. 2d at 281–82 (finding that, as the State conceded, evidence that the defendant stood in front of the window of his trailer home was not relevant and therefore should not have been admitted at the defendant's trial for sexual assault). This is because:

> [T]he greater latitude standard does not relieve a court of the duty to ensure that the other acts evidence is offered for a proper purpose under sec. 904.04(2). . . . Nor does it relieve a court of the duty to ensure the other acts evidence is admissible under sec. 904.03 and the other rules of evidence.

*Plymesser*, 172 Wis. 2d at 598. In other words, courts still must apply the three-step analysis set forth in *Sullivan*.

## B. ADMISSIBILITY OF THE EVIDENCE IN THIS CASE

¶ 53. Having articulated the applicable legal principles, we now turn to the question presented in this case: whether the trial court erroneously exercised its discretion when it admitted evidence that Davidson assaulted Cindy P. at his trial for assaulting Tina H. On appeal, the question is not whether this court would have admitted the other crimes evidence, " 'but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record.' " *Plymesser*, 172 Wis. 2d at 591 (quoting *State v. Kuntz*, 160 Wis. 2d 722, 745, 467 N.W.2d 531 (1991)). Thus, the trial court's exercise of discretion will be sustained if the trial court reviewed

the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion. *Sullivan*, 216 Wis. 2d at 780–81. If the trial court failed to articulate its reasoning, an appellate court will review the record independently to determine whether there is any reasonable basis for the trial court's discretionary decision. *Id.* at 781; *State v. Gray*, 225 Wis. 2d 39, 51, 590 N.W.2d 918 (1999).

### 1. *Whether the evidence was offered for a proper purpose*

¶ 54. The first step in our analysis of whether evidence of the Cindy P. assault was properly admitted is to determine whether the evidence was offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2). *Sullivan*, 216 Wis. 2d at 772.

¶ 55. The record indicates that during pretrial hearings, the State proposed various purposes for which the evidence could be admitted. The trial court's rulings on which purposes were permissible are somewhat unclear. The trial court ruled that the evidence could not be admitted solely for the purpose of establishing motive. However, the court later concluded that because the evidence was admissible for the purposes of establishing opportunity and plan or scheme, it could be admitted for the purpose of motive as well. The court reasoned that although the danger of prejudice outweighed the probative value of the evidence for the purpose of establishing motive, the danger of prejudice did not outweigh the evidence's probative value for the purpose of establishing plan or scheme. The court apparently concluded that because the evidence was therefore admissible for at least one purpose, all applicable purposes—motive, opportunity, and plan or scheme—could be submitted to the jury. The jury

instruction permitted the jury to consider evidence of the Cindy P. assault for the purpose of establishing motive and plan or scheme.[13]

¶ 56. Applying the greater latitude rule, the court of appeals concluded that the evidence was offered for a permissible purpose under Wis. Stat. § (Rule) 904.04(2). We agree.

¶ 57. First, the trial court could reasonably have concluded that the evidence was admissible for the purpose of establishing motive. Our cases establish that when the defendant's motive for an alleged sexual assault is an element of the charged crime, other crimes evidence may be offered for the purpose of establishing motive. *See Plymesser*, 172 Wis. 2d at 593 (citing *Friedrich*, 135 Wis. 2d at 25; *Fishnick*, 127 Wis. 2d at 260–61; *State v. Mink*, 146 Wis. 2d 1, 15, 429 N.W.2d 99 (Ct. App. 1988)).

¶ 58. The defendant in this case was charged with second-degree sexual assault of a child in violation of Wis. Stat. § 948.02(2). At the time of the defendant's crime, the statute provided in relevant part: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony."[14] Wis. Stat. § 948.02(2). "Sexual contact" is defined by Wis. Stat.

---

[13] The defendant points out that the trial court's decision to submit the evidence to the jury for the purpose of establishing plan or scheme seems to conflict with its earlier statement that the State would not be allowed to make an argument of "propensity, plan, or scheme." However, on the day of trial, the court clearly and unequivocally ruled that the jury could consider the evidence for the purpose of establishing motive and plan or scheme.

[14] Wisconsin Stat. § 948.02(2) was subsequently amended so that second degree sexual assault of a child now constitutes a

§ 948.01(5), which provided at the time of Davidson's offense:

> "Sexual contact" means any intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant.

Wis. Stat. § 948.01(5).[15]

¶ 59. Thus the defendant's purpose or motive for allegedly touching Tina H. was one element of the charged crime, and evidence relevant to motive was therefore admissible. *Plymesser*, 172 Wis. 2d at 595–96. *See also Fishnick*, 127 Wis. 2d at 260–61.

¶ 60. The evidence also was admissible to establish plan or scheme. Evidence of other crimes may be admitted for the purpose of establishing a plan or scheme when there is a concurrence of common elements between the two incidents. *Friedrich*, 135 Wis. 2d at 24; *State v. Spraggin*, 77 Wis. 2d 89, 99, 252 N.W.2d 94 (1977). The defendant accurately points out that there were differences between the Cindy P. and Tina H. assaults. The Cindy P. assault took place 10 years before the Tina H. assault, the victims were not the same age, the assaults took place in different places, and only the Tina H. assault involved touching of the victim's breasts.

Class BC felony. *See* 1995 Wis. Act 69 § 12 and Wis. Stat. § 948.02(2)(1997–98).

[15] Wisconsin Stat. § 948.01(5) was subsequently amended but the relevant-portion of the definition remains the same. *See* 1995 Wis. Act 69 §§ 10–11 and Wis. Stat. § 948.01(5)(1997–98).

¶ 61. However, as the trial court noted, the circumstances of the two incidents bear striking similarities. In both assaults, the victim was particularly vulnerable. Tina H., a thirteen-year-old girl, had been drinking wine given to her by the defendant; Cindy P., a six-year-old girl, had ventured alone to the basement of the church to get a drink of water. Also, both offenses took place in unlikely locations, in which the defendant could easily have been apprehended during the commission of the offense. Tina H. was assaulted in a camper while family members slept nearby; Cindy P. was assaulted in the basement of the church, next to the men's room and near to an occupied nursery, while church services took place on the main floor. Finally, both assaults involved touching the girls between the legs.

¶ 62. Because of these common elements, and in light of the greater latitude rule, we conclude that the trial court did not erroneously exercise its discretion when it allowed evidence of the Cindy P. assault to be submitted to the jury for the purpose of establishing plan or scheme.

### 2. Whether the evidence was relevant

¶ 63. Having determined that the other crimes evidence was offered for permissible purposes under Wis. Stat. § (Rule) 904.04(2), we next must examine whether the evidence was relevant under Wis. Stat. § (Rule) 904.01. *Sullivan*, 216 Wis. 2d at 772. The trial court did not explicitly articulate in what manner it believed evidence of the Cindy P. assault was relevant under § (Rule) 904.01. We therefore review the record independently to determine whether there is any rea-

sonable basis for the trial court's implicit conclusion that the evidence was relevant.

¶ 64. Relevance under Wis. Stat. § (Rule) 904.01 has two components; the evidence must relate to some fact that is of consequence to the determination of the action, and it must have some tendency to make that fact more or less probable than it would be without the evidence. Wis. Stat. § (Rule) 904.01; *Sullivan*, 216 Wis. 2d at 772.

¶ 65. As already discussed, the defendant's motive for touching Tina H. was an element of the charged crime, and the Cindy P. assault related to that consequential fact. Under our prior cases, the fact that the defendant denied sexually assaulting Tina H. does not change this conclusion. "The state must prove all the elements of a crime beyond a reasonable doubt, even if the defendant does not dispute all of the elements. . . . Evidence relevant to motive is therefore admissible, whether or not defendant disputes motive." *Plymesser*, 172 Wis. 2d at 594–95 (citing *Friedrich*, 135 Wis. 2d at 22, *Fishnick*, 127 Wis. 2d at 260–61; and *Mink*, 146 Wis. 2d at 15). *See also State v. Hammer*, 2000 WI 92, ¶ 25, 236 Wis. 2d 686, 613 N.W.2d 629 ("If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element."). It was reasonable to anticipate that jurors would have difficulty believing that the defendant could have any motive to sexually assault his young niece. *See Friedrich*, 135 Wis. 2d at 27–28 ("The average juror could well find it incomprehensible that one who stands before the court on trial could commit such an act."). This provides a reasonable basis for the trial court's implicit conclusion that evidence of the Cindy P. assault related to the

defendant's motive, a fact of consequence to the determination of the action.

¶ 66. The record also supports the determination that evidence of the Cindy P. assault was relevant to another fact of consequence—the defendant's opportunity or plan to commit a sexual assault in such an unlikely place. At trial, the defense presented evidence suggesting that it was nearly impossible that he could have assaulted Tina H. in the camper with his family nearby. Evidence of the Cindy P. assault, which also took place under circumstances when there was a danger of discovery, related to the question of whether the defendant could have had the opportunity to commit an assault under unlikely circumstances. *See Proper*, 85 Wis. at 629 ("[The defendant's] conduct on this occasion was corroborative of the evidence of the prosecutrix in respect to other indecent or criminal assaults, such as are charged in the information, and would tend to sustain and render more credible her evidence of other such occurrences.").

¶ 67. Having determined that the other crimes evidence related to facts of consequence to the case, we next must examine whether it has any tendency to make those facts more or less probable. "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." *Gray*, 225 Wis. 2d at 58 (citing *Sullivan*, 216 Wis. 2d at 786). The defendant argues that even under the greater latitude rule, the Cindy P. assault was not relevant because it did not bear the substantial similarities to the charged crime that the other crimes evidence in *Plymesser, Friedrich, Day*, and *Hendrickson* bore to the charged crimes in those cases. The defendant contends that "[t]he only similarity whatsoever between the [assault on Cindy P. and the alleged assault on Tina

H.] is the involvement of minor children," and that the other alleged similarities between the Cindy P. and Tina H. assaults are "illusory." (Defendant-Appellant's Brief at 35, 41.)

¶ 68. We cannot agree. To begin with, we note the obvious similarity that in both incidents, the defendant was sexually attracted to a child and acted on that sexual attraction by touching the child between her legs. Furthermore, both victims were assaulted when they were particularly vulnerable; Cindy P. was assaulted while she was alone at the drinking fountain, and Tina H. was assaulted while she was sleeping, after her uncle repeatedly gave her wine. Finally, both assaults occurred in locations in which there was a substantial risk of discovery. These similarities rendered evidence of the Cindy P. assault highly probative of the defendant's motive to assault Tina H. and of the defendant's opportunity and plan to commit the assault in the camper while his family slept nearby.

¶ 69. Indeed, the same degree of similarity was sufficient to satisfy this step of the analysis in *Plymesser* and *Friedrich*.

¶ 70. In *Plymesser*, the defendant was charged with sexually assaulting a thirteen-year-old girl, Kelly, in December 1989. *Plymesser*, 172 Wis. 2d at 586. Kelly testified that the defendant was a friend of her family and that the assault occurred while the defendant was driving Kelly to his home. *Id.* at 588. She testified that the defendant pulled the car over, kissed her, touched her breasts and vaginal area, and made her touch his penis. *Id.* at 588–89. The defendant admitted that he had been drinking on the night in question, but denied assaulting Kelly. *Id.* at 589. The trial court permitted the State to introduce evidence of the defendant's 1977 conviction for assaulting a seven-year-old girl. *Id.* at

589–90. The victim of the defendant's previous assault was also a daughter of the defendant's friends. *Id.* at 589. After first denying the assault, the defendant confessed that after drinking a lot of beer, he had put his mouth on the seven-year-old girl's vagina. *Id.* On appeal, this court determined that the evidence was relevant to establish the defendant's motive for the charged crime and to corroborate the victim's testimony. *Id.* at 595.

¶ 71. In *Friedrich*, the defendant was accused of sexually assaulting his fourteen-year-old niece while she was babysitting his children. *Friedrich*, 135 Wis. 2d at 7–8. The trial court permitted the State to present the testimony of two other girls who claimed that the defendant had sexually assaulted them. *Id.* at 17–18. One girl testified that five years earlier, when she was ten years old, the defendant pulled her pants down and touched her genital area after he picked her up from school. *Id.* at 17. The other girl testified that seven years before the trial, when she was thirteen years old, she was assaulted while babysitting the defendant's children. *Id.* at 17–18. While she was babysitting, she fell asleep; when she awoke, the defendant was sitting next to her. *Id.* at 17. She testified that he put his hand inside her pants and told her to move her legs. *Id.* at 17–18. This court concluded that the other crimes evidence was relevant because it tended to establish the existence of a scheme or plan, which related to the defendant's intent to commit the charged crime. *Id.* at 23–24.

¶ 72. These cases demonstrate that defendant's past offense need not be identical to the charged offense in order to be probative. Remoteness in time and differences in age are considerations, but they are not

determinative. Although there were differences between the Cindy P. and Tina H. assaults, the assaults shared many common features—both involved particularly vulnerable victims, took place in unlikely locations, and involved touching between the legs. Because of these similarities, and in view of the greater latitude rule as established in this court's precedents, the trial court could reasonably have concluded that the Cindy P. assault was probative of the defendant's motive, opportunity, and plan or scheme in the Tina H. assault.

### 3. Whether the danger of unfair prejudice substantially outweighed the probative value of the evidence

¶ 73. Having concluded that evidence of the Cindy P. assault was offered for proper purposes under Wis. Stat. § (Rule) 904.04(2) and was relevant under Wis. Stat. § (Rule) 904.01, we now must determine whether under Wis. Stat. § (Rule) 904.03 the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. " 'Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.' " *Gray*, 225 Wis. 2d at 64 (quoting *Sullivan*, 216 Wis. 2d at 789–90.).

¶ 74. Although the trial court explicitly concluded that the probative value of the evidence was not outweighed by the danger of prejudice, the court did not explain its reasoning. The court did state that if the evidence had been offered only to establish motive, the

danger of prejudice would have outweighed the proba-
tive value. Also, the court's determination that the
evidence was admissible for the purposes of establish-
ing opportunity, plan or scheme implicitly included a
determination that the danger of prejudice did not out-
weigh the probative value of the evidence for those
purposes.

¶ 75. We conclude that the record contains a rea-
sonable basis for the trial court's determination that
the probative value of the other crimes evidence was
not substantially outweighed by the danger of
prejudice under Wis. Stat. § (Rule) 904.03. The proba-
tive value of other crimes evidence " 'depends partially
upon its nearness in time, place, and circumstance to
the alleged crime or element sought to be proved.' "
*Plymesser*, 172 Wis. 2d at 595 (quoting *Fishnick*, 172
Wis. 2d at 261). In applying § (Rule) 904.03 to the other
crimes evidence in *Plymesser*, this court pointed to the
distinct similarities between the incidents. *Plymesser*,
172 Wis. 2d at 596. The court concluded that the fact
that in both incidents the defendant drank with friends
and then sexually assaulted the friends' daughters off-
set the thirteen-year gap in time between the assaults
and the difference in the girls' ages. *Id*. Likewise, in
*Friedrich*, analysis under § (Rule) 904.03 focused on
the common elements between the crimes: the girls
were of like age, they were part of the defendant's fam-
ily or had a quasi-familial relationship with the
defendant, the nature of the sexual contact was virtu-
ally identical, the defendant took advantage of the girls
in a relationship of implied trust, and the defendant
gratified his sexual desires through the physical con-
tact. *Friedrich*, 135 Wis. 2d at 24. Thus, similarities
between the other crimes evidence and the charged

crime may render the other crimes evidence highly probative, outweighing the danger of prejudice.

¶ 76. As discussed, the Cindy P. and Tina H. incidents bore marked similarities. Both assaults involved particularly vulnerable victims, took place under circumstances in which there was a risk of discovery, and involved touching young girls between the legs. Consistent with *Plymesser* and *Friedrich*, the trial court could reasonably have determined that these similarities made the other crimes evidence highly probative of the defendant's motive, opportunity, plan or scheme to commit the charged crime.

¶ 77. In addition, unlike the other crimes at issue in *Friedrich*, the Cindy P. assault was a charged, convicted crime, to which the defendant had pled guilty. The high degree of reliability of the evidence of the Cindy P. assault increased its probative value. *See Friedrich*, 135 Wis. 2d at 55–56 and n.12 (Heffernan, C.J., dissenting) (suggesting that when prior acts resulted in an arrest, charge, or conviction, reliability may outweigh considerations of remoteness in time).

¶ 78. The defendant argues that because the State's case was so dependent on Tina H.'s credibility and because the prosecutor referred to the Cindy P. assault in both the opening statement and closing arguments, the danger of prejudice outweighed the probative value of the evidence. However, the trial court took steps to limit the danger of unfair prejudice posed by the evidence. The evidence was introduced in the form of a stipulation rather than through testimony, minimizing the danger of arousing the jury's sympathies or horror at the Cindy P. assault. Also, the elimination of any reference to the fact that the Cindy P. assault occurred in a church prevented the risk that jurors would be unfairly prejudiced by that fact. Fur-

thermore, the court read a cautionary instruction to the jury immediately after the introduction of the Cindy P. evidence and once again after the closing arguments. Cautionary instructions help to limit the danger of unfair prejudice that might result from other crimes evidence. *Plymesser*, 172 Wis. 2d at 596–97 (citing *Fishnick*, 127 Wis. 2d at 262; *Mink*, 146 Wis. 2d at 17).

¶ 79. In view of our precedents, we conclude that the trial court reasonably could have determined that the probative value of the Cindy P. evidence was not substantially outweighed by the danger of unfair prejudice under Wis. Stat. § (Rule) 904.03.

¶ 80. In conclusion, we hold that under the three-step analytical framework set forth in *Sullivan*, and consistent with the greater latitude rule, the trial court's decision to admit evidence of the defendant's prior conviction for sexual assault did not constitute an erroneous exercise of discretion.

### III. PROSECUTOR'S STATEMENTS DURING CLOSING ARGUMENTS

¶ 81. Even if the admission of the other crimes evidence was not an error entitling him to a new trial, the defendant argues that a new trial is warranted on an alternative ground: prosecutorial misconduct during the closing arguments. The defendant's argument relates to two separate statements made by the prosecutor during closing arguments.

¶ 82. The first statement occurred near the beginning of the prosecutor's closing argument. The prosecutor stated, "So what is the truth? We talked a lot about the credibility of witnesses when we started

this, and the bottom line is this, do you believe Tina as I do?" The defense immediately objected, and the court sustained the objection, stating, "Counsel, you know better than that." The defense did not request a mistrial at that time. The defense argues that this statement was grossly improper because the prosecutor invited the jury to trust his judgment rather than its own view of the evidence. The defense contends that the error was prejudicial because Tina H.'s credibility was so essential to the case.

¶ 83. The second remark occurred during the prosecutor's rebuttal. During cross-examination, the prosecutor had asked the defendant's wife whether she said "that fucker" when Tina H.'s mother first called and told her about the assault. The defendant's wife denied making the statement, and the prosecutor did not question Tina H.'s mother on the matter. The defense commented during closing arguments that the prosecutor's own witness never verified this statement. On rebuttal, the prosecutor said, "Counsel made reference to the district attorney's question about that profanity word, that f—er, and he says my witness didn't even say that on the stand, and you know what, she didn't. You know why she didn't? I didn't ask the question." The defense promptly objected, and the court told the prosecutor, "Let's talk about what is in the evidence." The prosecutor moved on to other matters, and the defense did not request a mistrial at the time. The defense argues that this comment in effect constituted unsworn testimony by the prosecutor that the defendant's wife made the alleged statement and that such error deprived the defendant of his constitutional right to confront the witnesses against him.

¶ 84. The defendant did not move for a mistrial at the time either of these remarks were made or at any

time before the jury returned its verdict. After the jury found the defendant guilty, the defendant filed a motion for mistrial due to prosecutorial misconduct based on these allegedly improper statements. The defendant argued that the motion was properly charac-terized as a motion for mistrial rather than a postconviction motion, because the judgment of convic-tion had not yet been entered.

¶ 85. At a hearing on the motion, the trial court indicated that the prosecutor's statements were in error and that in both instances, the court had "even with the tone of voice, basically, curtly sustained the objection when the comments were made." However, the court held that neither error had so infected the trial with unfairness as to impact the defendant's due process rights. Furthermore, the court held that the defendant's motion for a mistrial was not timely because it should have been made at the time of the prosecutor's alleged misconduct. The trial court there-fore concluded that whether the defendant's motion was construed as a motion for a mistrial or as a motion for a new trial, it must be denied.

¶ 86. We conclude that the defendant waived his objections to the prosecutor's statement by failing to make a timely motion for mistrial. A defendant's fail-ure to move for a mistrial before the jury returned its judgment constitutes a waiver of his objections to the prosecutor's statements during closing arguments. *Haskins v. State*, 97 Wis. 2d 408, 424, 294 N.W.2d 25 (1980); *Neely v. State*, 97 Wis. 2d 38, 54–55, 292 N.W.2d 859 (1980); *State v. Patino*, 177 Wis. 2d 348, 380, 502 N.W.2d 601 (Ct. App. 1993); *State v. Holt*, 128 Wis. 2d 110, 137, 382 N.W.2d 679 (Ct. App. 1985). "If defense counsel had not intended to so waive his complaints there existed ample opportunity to make said motion

on the record," before or after the court charged the jury; failure to do so constitutes a waiver of those complaints. *Davis v. State*, 61 Wis. 2d 284, 287, 212 N.W.2d 139 (1973).

¶ 87. The defendant argues that even if his motion for mistrial was not timely made, a new trial is warranted because the prosecutor's conduct constituted "plain error" under Wis. Stat. § 901.03(4) and to accomplish the ends of justice under Wis. Stat. § 752.35.[16]

¶ 88. It is true that certain errors are so plain or fundamental that they cannot be waived. *Vollmer v. Luety*, 156 Wis. 2d 1, 21, n.5, 456 N.W.2d 797 (1990). When a defendant alleges that a prosecutor's statements constituted misconduct, the test we apply is whether the statements " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992)(quoting *Donnelly v.*

---

[16] We note that while the defendant points to Wis. Stat. § 752.35 as authority for the discretionary reversal of his conviction, Wis. Stat. § 751.06 is the statute that governs the discretionary reversal authority of this court. *See Vollmer v. Luety*, 156 Wis. 2d 1, 7 and n.2, 456 N.W.2d 797 (1990). "[T]he court of appeals has the same broad discretion under sec. 752.35, Stats., as does this court under sec. 751.06." *Id.* at 21. Under these statutes, appellate courts in Wisconsin have broad statutory authority to reverse judgments when (1) the real controversy has not been tried, or (2) there has been a miscarriage of justice and there is a substantial probability of a different result on retrial. *Id.* at 19.

In addition to this discretionary reversal power under the statutes, this court has the inherent power to conduct discretionary review of waived error when its appears to be in the best interests of judicial administration to do so. *Id.* at 12 (citing *State v. Dyess*, 124 Wis. 2d 525, 536, 370 N.W.2d 222 (1985)).

*DeChristoforo*, 416 U.S. 637, 643 (1974)). We cannot conclude that the prosecutor's statements in this case were so egregious as to constitute plain error. The comments were limited in scope, and the trial court sustained the defendant's objections and directed the prosecutor to limit his argument to the facts in evidence. The defendant made no motion for mistrial after the trial court addressed the objections. " '[A]ll we can assume is that the defendant was satisfied with the court's ruling and curative measure, and that he had no further objections. The defendant took his chances with the jury, curative instruction and all.' " *Neely*, 97 Wis. 2d at 55 (quoting *Neely v. State*, 86 Wis. 2d 304, 319, 272 N.W.2d 381 (Ct. App. 1980)). Accordingly, we find no plain error and decline to grant a new trial in the interests of justice. *Neely*, 97 Wis. 2d at 55.

¶ 89. In sum, although the prosecutor's statements appear to have been improper, we conclude that the defendant waived his objections to the statements by failing to make a contemporaneous motion for mistrial. We also determine that the prosecutor's statements did not constitute plain error or warrant reversal in the interests of justice.

## IV. CONCLUSION

¶ 90. Because the trial court's decision to admit the other crimes evidence was not an erroneous exercise of discretion, and because objection to the prosecutor's statements was waived and the statements do not constitute plain error or warrant reversal in the interests of justice, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 91. ANN WALSH BRADLEY, J. *(dissenting)*. Although I have misgivings with the majority's expansive application of the greater latitude rule, I write separately to address its attempt to fit the "square peg" of prior acts evidence into the "round hole" of an acceptable statutory purpose of motive, plan, or scheme.

¶ 92. Wisconsin Stat. § (Rule) 904.04(2) warns that prior acts evidence is not admissible to prove the character or propensity of the person charged with an offense. Although there exist limited purposes for which such prior acts may be admitted, the "general rule is to exclude evidence of other bad acts to prove a person's character in order to show that the person acted according to his character in committing the present act." *State v. Fishnick*, 127 Wis. 2d 247, 253, 378 N.W.2d 272 (1985).

¶ 93. Our other acts jurisprudence in child sexual assault cases continues to veer farther from the prohibition against propensity evidence set forth under Wis. Stat. § (Rule) 904.04(2). Today the majority continues the trend in eroding the statutory mandate. Its attempt to link Davidson's prior conviction to an acceptable statutory purpose is a thinly veiled endorsement of the unrestricted use of propensity evidence in child sexual assault cases.

¶ 94. In *Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967), this court noted the danger in admitting prior acts evidence. The court set forth reasons for limiting the use of such evidence: 1) the overwhelming tendency to presume the defendant guilty because he is a person likely to commit such acts; 2) the tendency to condemn not because of the defendant's actual guilt but because he may have escaped punishment for previous acts; 3) the injustice in attacking a person who is not prepared to show that the

evidence used for attack is fabricated; and 4) the confusion of issues that may result from the introduction of other crimes. *Id.*

¶ 95. Despite *Whitty*'s admonitions, the majority sanctions the admission of Davidson's prior act by contorting the definitions of the acceptable purposes enumerated under Wis. Stat. § (Rule) 904.04(2). The majority approves the use of the prior act to establish motive and erroneously subscribes to the view that motive is an element of second-degree sexual assault of a child. Majority op. at ¶¶ 59, 65. It is not. "While motive may be shown as a circumstance to aid in establishing the guilt of a defendant, the State is not required to prove motive on the part of a defendant in order to convict." Wis JI—Criminal 175.

¶ 96. Sexual gratification is inherent in the crime of sexual assault, and a defendant's conduct reveals this purpose. When the identity of the defendant is in issue or there is a claim that the sexual contact was "innocent" and occurred by mistake, prior acts evidence may be relevant. *State v. Friedrich*, 135 Wis. 2d 1, 53, 398 N.W.2d 763 (1987) (Heffernan, C.J., dissenting). In this case Davidson did not assert a defense of mistake or raise the issue of identity, but rather he asserted that the alleged assault never occurred. Thus, neither motive nor even the purpose of sexual gratification was at issue.

¶ 97. The circuit court acknowledged as much in one of its earlier motion hearings to determine the admissibility of Davidson's prior conviction. Aware that Davidson's defense to the charge was that the sexual assault never occurred, the court noted:

> As far as plan or motive, like I say, the defendant has a good point on that. Quite simply, that if you

> get to the incident happening at all, plan or motive is no longer a serious issue. That's the way I see the case, at this point.

Nevertheless, the circuit court subsequently retreated and allowed the conviction into evidence not solely to establish motive, which the court recognized would be unfairly prejudicial, but additionally to establish plan, scheme, or opportunity. This decision was an erroneous exercise of discretion.

¶ 98. By allowing the prior act into evidence to establish motive, the circuit court admitted propensity evidence that it acknowledged would be highly prejudicial. In effect, this evidence suggested to the jury that because Davidson previously had committed a sexual assault against a minor, he had the proclivity to perpetrate an assault upon his 13-year-old niece. Davidson was thereby subjected to defending against both his present charge and a past act for which he had already served his punishment.

¶ 99. The majority cites several cases in support of its liberal admission of prior acts evidence under the guise of motive. *See State v. Plymesser*, 172 Wis. 2d 583, 593, 493 N.W.2d 367 (1992); *Friedrich*, 135 Wis. 2d at 22; *Fishnick*, 127 Wis. 2d at 260–61. These cases warrant a thorough re-examination, however, because they validate the indiscriminate use of other acts evidence when motive is not at issue and when the defendant's conduct alone establishes the purpose of sexual gratification.

¶ 100. Both *Fishnick* and *Friedrich* do contain the magic cautionary words: "[o]ther-acts evidence is admissible when probative of the elements of a crime, subject to the general rule excluding character evidence." *Fishnick*, 127 Wis. 2d at 250; *Friedrich*, 135 Wis. 2d at 22. However, the words of caution have a

toothless effect here because the majority's analysis is tantamount to a blanket rule permitting character evidence in child sexual assault cases. This approach amounts to an unwarranted relaxation of the evidentiary standard under Wis. Stat. § (Rule) 904.04(2).

¶ 101. In further relaxation of this evidentiary standard, the majority approves the use of Davidson's 10-year-old conviction to prove plan or scheme under the statute. "Evidence showing a plan establishes a definite prior design, plan or scheme which includes the doing of the act charged." *State v. Spraggin*, 77 Wis. 2d 89, 99, 252 N.W.2d 94 (1977). This requires more than a similarity between the prior act and the charged offense. Indeed, there must be a linkage between the two acts that permits the conclusion that the prior act led to the commission of the charged offense. *State v. DeKeyser*, 221 Wis. 2d 435, 448, 585 N.W.2d 668 (Ct. App. 1998). *See also Friedrich*, 135 Wis. 2d at 39 (Heffernan, C.J., dissenting) (citing Cleary, *McCormick on Evidence*, § 190, p.559 (3d ed. 1984)).

¶ 102. The threshold measure for this similarity is nearness of time, place, and circumstance of the other act to the alleged offense. *Hough v. State*, 70 Wis. 2d 807, 814, 235 N.W.2d 534 (1975). It is difficult to imagine how Davidson's sexual contact with a six-year-old girl in the basement of a church constituted a step towards the commission, a decade later, of the alleged assault of his 13-year-old niece in a family camper. The two acts represent distinct events, separated by a significant period of time and occurring at different places under dissimilar circumstances. They are not part of a particular plan to achieve a specific purpose.

¶ 103. To justify the admission of Davidson's prior conviction, the majority nevertheless asserts that there exist striking similarities between the two acts in

the potential for discovery, the vulnerability of the minor victims, and the type of sexual contact involved. The majority's assertion is unpersuasive. I agree with the court of appeals that the likelihood of discovery in a church basement while people are either upstairs or down the hall in a separate room is markedly different than the potential for discovery in a situation in which family members are sleeping four or five feet away.

¶ 104. Furthermore, although both victims were vulnerable because they were minors, the vulnerability of a six-year-old approached by a stranger differs considerably from the vulnerability of a 13-year-old confronted by her uncle with other family members nearby. Finally, the type of sexual contact presented in both incidents, the touching of the girls between their legs, is a type of contact unfortunately at issue in an overwhelming number of sexual assault cases.

¶ 105. The general similarities between the two incidents do not reveal a unified plan or scheme to justify the use of Davidson's prior conviction in his prosecution for sexually assaulting his niece. The majority's approval of Davidson's prior conviction as admissible other acts evidence stands in direct contravention of *Whitty*, 34 Wis. 2d at 292, which expressed utmost concern over the potential of unfair prejudice and urged the exercise of restraint in admitting prior acts evidence.

¶ 106. As the court of appeals noted, this court recently reaffirmed the vitality of *Whitty* in *State v. Sullivan*, 216 Wis. 2d 768, 775, 576 N.W.2d 30 (1998). Although not a sexual assault case, *Sullivan* recognized the significant danger underlying the liberal acceptance of prior acts evidence. Yet, the majority pays only lip service to *Sullivan* and overlooks the reinvigoration of *Whitty*. It accomplishes this by applying

the three-prong test in its analysis while ignoring the substance of *Sullivan*'s holding, which requires a careful determination of prior acts so that unfair prejudice through the use of character evidence is avoided.

¶ 107. This court now has an established pattern of admitting prohibited propensity evidence. In a rare exception to this established pattern, the court recently approved the exclusion of other acts evidence in a sexual assault case. However, predictably it was in a case in which the defendant, not the State, sought to introduce the evidence. *See State v. Scheidell*, 227 Wis. 2d 285, 595 N.W.2d 661 (1999). The majority reached this conclusion notwithstanding its acknowledgement that a less stringent standard for admissibility applies when a defendant offers prior acts for purposes of exoneration. *Id.* at 304.

¶ 108. Unfortunately our post-*Whitty* jurisprudence consistently reveals that courts may freely permit prior acts evidence in child sexual assault cases to show the defendant's propensity to abuse children. Despite *Sullivan*'s valiant attempt to revitalize *Whitty* and its call to exercise restraint in prior acts determinations, this court has once again contorted the definitions of the acceptable statutory purposes to meet the facts.

¶ 109. Rather than endeavoring to stretch beyond repair the definitions of the acceptable purposes under Wis. Stat. § (Rule) 904.04(2), the majority should simply lay all its cards on the table and acknowledge that it is sanctioning the blanket use of propensity evidence in child sexual assault cases. However, the majority maintains its refuge under the cloak of the very statute it simultaneously erodes. The dissimilarities between Davidson's prior act and present charge are pronounced and do not serve to establish

any acceptable purpose under Wis. Stat. § (Rule) 904.04(2). Instead, Davidson's prior conviction constitutes propensity evidence excluded under the statute.

¶ 110. An honest and forthright approach by the majority would serve us all better than perpetrating the artifice of adherence to Wis. Stat. § (Rule) 904.04(2). Because the majority engages in legal gymnastics to justify the admission of propensity evidence in contravention of the statute, I dissent.

¶ 111. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON and JUSTICE WILLIAM A. BABLITCH join this dissenting opinion.