S<small>TATE</small> of Wisconsin, Plaintiff-Respondent,

v.

Randy M<small>C</small>G<small>OWAN</small>, Defendant-Appellant.

Court of Appeals

*No. 2004AP3380–CR. Oral argument January 18, 2006.
—Decided March 7, 2006.*

2006 WI App 80

(Also reported in 715 N.W.2d 631.)

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *Dianne M. Erickson* of *Wasielewski and Erickson* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Juan B. Colas*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *Juan B. Colas*.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. KESSLER, J. Randy McGowan appeals from

an amended judgment of conviction entered after a jury found him guilty of four counts of first-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(1) (1993–94).[1] McGowan argues that he is entitled to a new trial because the trial court erroneously admitted evidence of another act that was alleged to have occurred when McGowan was ten years old and that involved a different alleged victim. We conclude that the evidence in question was improperly admitted and that the error was not harmless beyond a reasonable doubt. We reverse and remand with directions.

## BACKGROUND

¶ 2. In May 2003, then-eighteen-year-old Sasha C. reported to the Milwaukee Police Department that McGowan had repeatedly sexually assaulted her. Sasha told police that McGowan, who is her older cousin, sexually assaulted her over a two-and-a-half-year period beginning when Sasha was eight years old and McGowan was eighteen years old. McGowan was arrested and charged with four counts of first-degree sexual assault of a child.[2] He pled not guilty and the case proceeded to trial.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] McGowan was also charged with two counts of repeatedly sexually assaulting a child, contrary to Wis. Stat. § 948.025(1) (effective April 23, 1994). The jury found him guilty of one count and not guilty of the other. The trial court convicted McGowan of one count based on the jury's verdict, but vacated that conviction when postconviction counsel pointed out that § 948.025(1), created by 1993 Wis. Act 227, was effective only for offenses that occurred on or after April 23, 1994. The amended judgment from McGowan's appeal does not include a

¶ 3. At trial, Sasha testified that the abuse began in the summer of 1993. Sasha said that she and her brother both slept in the basement that summer. She said during that time, McGowan often stayed at her house with her mother, stepfather and brother. McGowan, who was visiting from Chicago, would perform yard work for Sasha's family.

¶ 4. Sasha said that she remembers the first time McGowan abused her. She testified that she and McGowan were in the basement of her house, which served as a recreation room. She and McGowan were sitting on the couch, watching television. She testified:

> He turned my body to the left, placed my left leg on top of the back of the couch and placed—and he scooted in between—in between me, placed my right leg onto his lap. Then he began to scooch my shorts and my panties down, and then he got them all the way down, and he began oral sex on me.

Sasha said that McGowan then had sexual intercourse with her on the couch. She said that she screamed and McGowan covered her mouth.

¶ 5. Sasha testified that McGowan eventually stopped, and told Sasha to put her clothes back on. Sasha said that after this, "he said don't tell anyone, and if I did he'll kill me, and no one would ever believe me anyway."

¶ 6. Sasha said that the next night, McGowan woke her in the middle of the night and indicated that she should follow him. She said McGowan took her to the other side of the basement and made her perform oral sex on him. She said McGowan then had anal sex with her.

conviction for repeatedly sexually assaulting a child. Thus, we will not further address alleged violations of § 948.025(1) in this appeal.

¶ 7. Sasha testified that over the following months, McGowan continued to wake her at night and force her to engage in sexual activity in the basement. "We would have not too much anal sex but oral and vaginal sex." She said she did not tell anyone about the abuse because she was afraid that McGowan would kill her. "He had me believing everything that he said. No one would believe me, he would kill me, I believed it."

¶ 8. Sasha said the sexual abuse continued during the summer of 1993, and then continued sporadically over the next three years, when McGowan would visit from out of town. Sasha said the abuse stopped in 1996 when her stepfather went to prison, which caused McGowan to stop visiting.

¶ 9. In addition to Sasha's testimony, the jury also heard testimony from a female cousin, Janis W., who was twenty-four years old at the time of the trial, about a single incident she said occurred with McGowan when she was approximately five years old and in kindergarten, and McGowan was ten years old. Janis said that on that occasion, McGowan forced her to perform oral sex on him and urinated in her mouth. This took place in the bathroom of a house where Janis and her family were living with McGowan's family. Janis said she did not tell anyone about the incident because she thought no one would believe her. She said the first time she told anyone was after McGowan was arrested for allegedly abusing Sasha. Janis explained that when her mother told her about McGowan's arrest, Janis then told her mother that McGowan had also abused her. Janis's disclosure was nineteen years after her experience with McGowan.

¶ 10. Janis's testimony was allowed over the objection of the defense. The trial court concluded that this other acts evidence was admissible to show McGowan's intent and motive.

¶ 11. McGowan did not testify. In closing argument, his trial counsel argued that there was insufficient evidence to convict McGowan. Trial counsel contended that Sasha's story was ridiculous because her screams would have awakened her brother and emphasized the fact that there was no physical evidence indicating that the assaults took place. Trial counsel argued that it was inconceivable that no one would have had an indication that abuse was going on, given Sasha's size and the assumption that she would have suffered physical injury from the abuse.

¶ 12. McGowan was found guilty of four counts of first-degree sexual assault of a child and sentenced to ten years on count one, concurrent with ten years on count two. McGowan was sentenced to ten years on counts three and four, concurrent to one another, but consecutive to counts one and two. This appeal followed.

## DISCUSSION

¶ 13. McGowan argues that the trial court erred when it admitted Janis's testimony as other acts evidence, and that he is therefore entitled to a new trial. We agree.

### I. Legal standards

¶ 14. The admissibility of other acts evidence is governed by Wis. Stat Rule 904.04(2), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The supreme court has provided significant guidance

concerning the use of other acts evidence in child sexual assault cases. In *State v. Davidson*, 2000 WI 91, 236 Wis. 2d 537, 613 N.W.2d 606, the court discussed the three-step framework, which was originally set forth in *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998), that courts must follow when deciding whether to admit other acts evidence in all Wisconsin cases:

> 1. Is the other acts evidence offered for an acceptable purpose under WIS. STAT. § (Rule) 904.04(2)?
>
> 2. Is the other acts evidence relevant under WIS. STAT. § (Rule) 904.01?
>
> 3. Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice, confusion, or delay under WIS. STAT. § (Rule) 904.03?

*Davidson*, 236 Wis. 2d 537, ¶ 35. *Davidson* also recognized that "alongside this general framework, there also exists in Wisconsin law the longstanding principle that in sexual assault cases, particularly cases that involve sexual assault of a child, courts permit a 'greater latitude of proof as to other like occurrences.' " *Id.*, ¶ 36 (citations omitted). *Davidson* held that "in sexual assault cases, especially those involving assaults against children, the greater latitude rule applies to the entire analysis of whether evidence of a defendant's other crimes was properly admitted at trial." *Id.*, ¶ 51.

¶ 15. When reviewing a trial court's decision to admit or exclude other acts evidence, we consider whether the trial court " 'exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record.' " *Id.*, ¶ 53 (citation omitted). We will affirm if the trial court "reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclu-

sion." *Id.* If the trial court failed to articulate its reasoning, we will review the record independently to determine whether there is any reasonable basis for the trial court's discretionary decision. *Id.*

## II. Application of the *Sullivan* test

¶ 16. With these standards in mind, we now review the trial court's decision to admit evidence that McGowan assaulted Janis, keeping in mind the obligation imposed upon this court to independently review the record to ascertain whether there is a reasonable basis for the trial court to have admitted other acts evidence. *See State v. Hunt*, 2003 WI 81, ¶ 4, 263 Wis. 2d 1, 666 N.W.2d 771.

### A. Was the evidence offered for a proper purpose

¶ 17. The trial court concluded that Janis's other acts testimony was admissible as proof of motive and intent. The State, at oral argument, argued the testimony was also properly admissible as evidence of "background and context" and to "bolster the credibility" of the complaining witness, Sasha. We question whether the evidence could properly be admitted as evidence of motive and intent in a case where intent is not at issue. However, we will assume for purposes of this opinion that the evidence was offered for a proper purpose and move on to the second step of the *Sullivan* analysis.

### B. Relevance to a fact of consequence to the determination of the action

¶ 18. The second step in the *Sullivan* analysis involves relevance. "Relevance under Wɪs. Sᴛᴀᴛ. § (Rule)

904.01 has two components; the evidence must relate to some fact that is of consequence to the determination of the action, and it must have some tendency to make that fact more or less probable than it would be without the evidence." *Davidson*, 236 Wis. 2d 537, ¶ 64. "However, if the other acts evidence is probative of nothing more than the defendant's propensity to act a certain way, the evidence is not admissible." *State v. Barreau*, 2002 WI App 198, ¶ 40, 257 Wis. 2d 203, 651 N.W.2d 12.

¶ 19. Here, the trial court concluded that the fact or proposition of consequence was "the defendant's intent as to his interaction with the alleged victim here[.]" It further recognized that when examining the evidence's probative value, it was to consider the "incident's nearness in time, place, and circumstances to the alleged crime or the fact or proposition sought to be proved. The greater the similarity, complexity and distinctiveness of the events, the stronger is the case for the admission of the other acts evidence." Applying these standards to Janis's proffered testimony, the trial court stated:

> Here the nearness in time, it's not a set of allegations which is near in time. The court notes that the place and circumstances to the alleged crime, in that instance it would . . . [have occurred in] the area of 24th and Hadley in Milwaukee.
>
> The Court notes that . . . Janis recalls her family slept in one bedroom. She notes . . . [that her family and the defendant's family lived] together for a short period. That does have a similarity with the action here in that the allegations in the criminal complaint would be that [McGowan] was staying over and doing work at the house in which Sasha [] lived.
>
> The Court would note here with regard to relevance that . . . the sexual acts that would be testified

221

to by [Janis] are similar in nature to the criminal complaint which has been filed here . . . . [Sasha] goes into great detail about an incident involving penis to mouth sexual intercourse . . . .

Thus, the trial court concluded that because the acts involved cousins living in the same household and penis-to-mouth intercourse, Janis's allegations were probative of Sasha's allegations.

¶ 20. We cannot conclude that the allegations are sufficiently factually similar to justify admission of Janis's testimony as other acts evidence. Assuming the truthfulness of both Sasha and Janis for purposes of this analysis, we conclude that a single assault, by one young child on another young child, eight years before repeated assaults by an adult on a different child who was three years older than the first victim, together with significant differences in the nature and quality of the assaults, does not tend to make the latter frequent and more complex assaults of Sasha more probable. Nor does such testimony make Sasha's testimony about the later events more credible because of the significant differences in the details involving the earlier event and the later events. Nor does the conduct of a ten-year-old child give "context" to, or provide evidence of the motive or intent of, an adult some eight or more years later. *See Barreau*, 257 Wis. 2d 203, ¶ 38 ("Because of the considerable changes in character that most individuals experience between childhood and adulthood, behavior that occurred when the defendant was a minor is much less probative than behavior that occurred while the defendant was an adult.").

¶ 21. We conclude that Janis's testimony was inadmissible under part two of the *Sullivan* test. However, even if the testimony were relevant, we conclude

that it would be inadmissible because it also fails under the third part of the *Sullivan* test.

## C. Does the danger of unfair prejudice substantially outweigh the probative value of the evidence

¶ 22. The third prong of the *Sullivan* test requires courts to

> determine whether under WIS. STAT. § (Rule) 904.03 the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. " 'Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.' "

*Davidson*, 236 Wis. 2d 537, ¶ 73 (citations omitted).

¶ 23. Here, the offered evidence (testimony of forced fellatio, performed by a five-year-old child victim, followed by urination in the victim's mouth) undoubtedly aroused the jury's "sense of horror" and "provoke[d] its instinct to punish." *See Sullivan*, 216 Wis. 2d at 789–90. Revulsion as to this conduct is not significantly mitigated by the fact that McGowan was only ten years old at the time and the event was an isolated incident. Given the obvious probable prejudice to the defendant, the probative value of the evidence to prove a legitimate fact of consequence—which is not proof of the defendant's character—should be strong indeed. The slim reeds of probative value identified above crumble here under the weight of prejudice to the defendant.

¶ 24. For all of the aforementioned reasons, we conclude that the trial court erroneously admitted Janis's testimony as other acts evidence.

### III. Harmless error analysis

¶ 25. Having determined that admission of the other acts evidence was improper, we must next determine whether that error was harmless. *See State v. Gary M.B.*, 2003 WI App 72, ¶ 28, 261 Wis. 2d 811, 661 N.W.2d 435 (wrongly admitted evidence of other acts is subject to harmless error analysis), *aff'd*, 2004 WI 33, 270 Wis. 2d 62, 676 N.W.2d 475. Our supreme court recently explained that "[a]n error is harmless if the beneficiary of the error proves 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Hale*, 2005 WI 7, ¶ 60, 277 Wis. 2d 593, 691 N.W.2d 637 (citation and footnote omitted).

¶ 26. In determining whether an error is harmless, we may consider some or all of the following factors:

> the frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case.

*Id.*, ¶ 61. After reviewing the present record with these factors in mind, we cannot conclude beyond a reasonable doubt that the admission of Janis's testimony did not contribute to the verdict obtained. *Id.*, ¶ 60.

224

¶ 27. As we begin our analysis of the trial testimony, we note that McGowan's defense theory was that the events charged never happened. The defense claimed Sasha was fabricating her claims. The State's case depended on the jury believing Sasha's testimony. There was no physical evidence, and there were no witnesses to the alleged assaults.

¶ 28. According to the trial testimony, Sasha did not disclose the assaults until specifically confronted by her mother in 2003, ten years after the beginning of the assaults she describes. Initially, Sasha twice denied, then admitted to her mother, that she had been assaulted by McGowan.

¶ 29. As summarized earlier, Sasha testified that she was first assaulted beginning in the summer of 1993, when she was eight. She testified that she and her brother both slept in the basement most of the summer of 1993. She provided a detailed, and graphic, description of the first assault. Sasha testified that she screamed and cried. There was no testimony that anyone heard her. Sasha described a variety of sexual acts involving mouth, vagina, penis and anus. She described burning and painful sensations during this contact. Sasha testified that she told no one of the assaults, and she did not exhibit any signs of physical harm during or after the time of the assaults.

¶ 30. Brian Patterson, a cousin to both Sasha and McGowan, who has known both all his life, testified for the State. Patterson described a road trip he, his daughter, his girlfriend, and another cousin, Anthony Glave, took to New York. He testified about a statement Glave made during the drive to New York, which Glave attributed to McGowan. According to Patterson, Glave said that McGowan had told Glave that McGowan "had sexual relations with Sasha when she was younger."

Patterson conveyed this information to Sasha's mother upon his return from the trip.

¶ 31. Although the jury heard testimony that McGowan had admitted the offense to Glave, Glave did not testify at trial. Detective Laurie Gaglione testified about her unsuccessful efforts to locate Glave so that he could testify.

¶ 32. Sasha's mother, Tracy D., testified. Tracy confirmed that McGowan frequently stayed at their home and worked with her husband. She acknowledged that McGowan spent several nights a week there during the summer of 1993. Tracy testified that Sasha and Sasha's brother slept in the basement for only a short time after they moved into the house, until their bedroom furniture arrived. She testified that after that short time, both Sasha and her brother generally slept in their bedrooms upstairs, not in the basement. She did agree that occasionally the children fell asleep watching television in the basement and slept on the couch down there. Tracy also testified that in the summer of 1993, they were breeding German Shepherd dogs at their home and had two adult dogs and one puppy—providing a basis for the defense to argue that the dogs would have barked if they had heard screams. Tracy testified that she had no reason to believe that anything unusual had happened to Sasha during the summer of 1993.

¶ 33. A social worker for child protective services testified as an expert witness on child sexual abuse. The social worker testified that in her experience, most child sexual abuse cases are not reported right away. The social worker also testified that she had never interviewed Sasha or any other witness involved in this case.

¶ 34. Robert McGowan, the defendant's older brother, testified on behalf of the defense about where he and McGowan lived during the summer of 1993. Robert testified that his brother essentially stayed at Robert's home, with the exception of approximately thirty days spread throughout the summer when McGowan stayed with Sasha's parents and worked for Sasha's stepfather. Robert worked in the auto body shop owned by Sasha's stepfather, where McGowan also occasionally worked.

¶ 35. McGowan's fiancée, Shamilwa Harris, testified about McGowan's living arrangements. She said that McGowan lived with Harris's aunt, Evelyn Harris, from approximately the end of 1993 to the beginning of 1997.

¶ 36. Sasha's cousin, Janis, whose testimony we discussed at length above, testified that on a single occasion, nineteen years earlier, when she was approximately five years old and McGowan was ten, he forced her to perform fellatio on him and urinated in her mouth. She testified that she remembered this because it was "gross and disgusting." She acknowledged that she never told anyone until she learned of Sasha's allegations.

¶ 37. Based on our review, we are not convinced beyond a reasonable doubt that the admission of Janis's testimony did not contribute to the verdict. The State's case was based entirely on various recollections about events that occurred years earlier.[3] The defense disputed many of those recollections and noted the lack of physical evidence of any sort corroborating physical

[3] *See* earlier descriptions of evidence, ¶¶ 3–9 and ¶¶ 28–36.

abuse by a large man of a small child. The other acts evidence suggesting that he had sexual contact as a child with another cousin actually attacked McGowan's character. We cannot say it did not affect the jury's assessment of McGowan's character and contribute to the verdict. The State, as the beneficiary of the error, has not proven " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *See id.*, ¶ 60 (citation and footnote omitted). For these reasons, we must reverse and remand for a new trial.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.