COURT OF APPEALS
DECISION
DATED AND FILED

August 1, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP46-CR**

Cir. Ct. No. **2018CF849**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

CLIFTON V. ELMER,

    DEFENDANT-APPELLANT.

      APPEAL from a judgment of the circuit court for Rock County: JOHN M. WOOD, Judge. *Affirmed*.

      Before Kloppenburg, P.J., Graham, and Nashold, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Clifton Elmer appeals a judgment of conviction for second-degree sexual assault of a child.  He argues that the circuit court erroneously exercised its discretion in admitting other acts evidence.  We affirm.

¶2     The charge against Elmer in this case was based on an incident in which the victim, A.B.,[1] alleged that Elmer grabbed her butt.  A.B. also alleged that in previous months or years Elmer had sexually assaulted her in other instances, including an incident in which he removed her pants and put his mouth on her vagina, and a separate incident in which he removed his penis from his pants, put her hand on it, and moved her hand back and forth while it was erect.

¶3     In statements that Elmer made to law enforcement, he initially denied ever being alone with A.B. but then admitted that he had been alone with her.  When asked if he had ever "slapped" her butt, he did not deny that he had, and went on to talk about how he would playfully slap the butt of another child in the same household.  Elmer also stated that he had once accidently grabbed A.B.'s mother's butt, mistakenly thinking that A.B.'s mother was A.B.'s grandmother.[2]

¶4     Prior to trial, the State moved to admit evidence of the uncharged alleged assaults, including the two alleged incidents that are discussed above.  The State argued that these other alleged assaults were relevant to prove Elmer's motive,

---

[1]  To protect her privacy, we refer to the victim using initials that do not correspond with her own.  *See* WIS. STAT. RULE 809.86(4) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  According to testimony at trial, Elmer was A.B.'s grandmother's boyfriend.

intent, opportunity, or plan in grabbing A.B.'s butt, as well to prove the absence of mistake or accident.[3] Elmer opposed the motion.

¶5    The circuit court granted the motion, concluding that the evidence satisfied the three-prong test for the admission of other acts evidence under *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). The case proceeded to a jury trial, and the jury found Elmer guilty.

¶6    The sole issue on appeal is whether the circuit court erred in admitting the other acts evidence. We review a circuit court's decision to admit other acts evidence for an erroneous exercise of discretion. *State v. Lock*, 2012 WI App 99, ¶43, 344 Wis. 2d 166, 823 N.W.2d 378. We will uphold the court's exercise of discretion as long as the court "examines the relevant facts, applies a proper standard of law, and uses a demonstrably rational process to reach a conclusion that a reasonable judge could reach." *Id.* "We generally look for reasons to sustain the [circuit] court's discretionary decisions." *Id.*

¶7    We review the circuit court's decision to admit other acts evidence with reference to the three-prong test set forth in *Sullivan*. The first prong is whether the evidence is "offered for an acceptable purpose … such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Sullivan*, 216 Wis. 2d at 772. The second prong is whether the evidence is relevant. *Id.* This requires an assessment of the probative value of the evidence. *Id.* The third prong is whether "the probative value of the other acts

---

[3] Consistent with the complaint, the State's motion describes the charged incident as Elmer grabbing A.B.'s butt. At trial, there was evidence that Elmer also touched part of A.B.'s vagina when he grabbed her butt. The precise nature of the incident is not material to our analysis.

evidence [is] substantially outweighed by the danger of unfair prejudice" or other countervailing considerations. *Id.* at 772-73.

¶8 Additionally, because this is a child sexual assault case, the greater latitude rule applies. *State v. Hurley*, 2015 WI 35, ¶59, 361 Wis. 2d 529, 861 N.W.2d 174. The greater latitude rule allows more liberal admission of other acts evidence, and the rule applies to each *Sullivan* prong. *Id.*

¶9 As to the first *Sullivan* prong, Elmer concedes that it is satisfied. Specifically, he concedes that the State properly sought to admit evidence of the other alleged assaults to show that he acted intentionally and for the purpose of sexual gratification in allegedly grabbing A.B.'s butt. We agree with this concession, and we also conclude that the State properly offered the evidence to show absence of mistake or accident. Given Elmer's statements to law enforcement, it was reasonable to assume that he might claim at trial either that he grabbed A.B. intentionally but without the purpose of sexual gratification, or that he grabbed her by mistake or accident.

¶10 As to the second *Sullivan* prong, Elmer concedes that the other alleged assaults were relevant, although he asserts that they were only "marginally" relevant and only to show that, if he grabbed A.B.'s butt, he had a sexual motive for doing so. We agree that the evidence was relevant, but disagree that the relevance was only marginal. The evidence was highly relevant to prove that Elmer grabbed A.B.'s butt with the purpose of sexual gratification, and also relevant to show that he grabbed her butt intentionally, not as a mistake or accident. If Elmer had engaged in unambiguously sexual conduct with A.B. on the other occasions as alleged, then it stood to reason that he had a sexual motive when he grabbed her butt, and that he did not grab her butt my mistake or accident.

¶11     This leaves the third *Sullivan* prong.  According to Elmer, the circuit court could not reasonably conclude that the probative value of the other alleged assaults outweighed the danger of unfair prejudice.  For the reasons we now explain, we disagree.

¶12     Elmer contends that there are three main reasons why the other alleged assaults carried too great a risk of unfair prejudice.  First, he argues that the other alleged assaults were far more serious than the alleged assault for which he was charged.  Second, he argues that the State's heavy reliance on the other assaults at trial amplified the danger of prejudice.  Third, he argues that the cautionary instruction the jury received on the other acts evidence was overly broad and insufficient.

¶13     We begin with Elmer's second and third arguments.  Each of these arguments focuses on events at trial that occurred *after* the circuit court's pretrial ruling to admit the other acts evidence.  Elmer does not persuade us that these subsequent events show that the court erred in its pretrial ruling.  The events at trial might raise other issues, such as whether there was preserved error relating to evidentiary rulings at trial or the cautionary instruction, but Elmer does not develop arguments on those issues.[4]

¶14     What remains for discussion is Elmer's argument that the other alleged assaults carried too great a risk of unfair prejudice because they were far more serious than the charged incident.  Elmer argues that admitting evidence of other acts that are far more serious than the charged act poses a special danger of

---

[4] The wording of the cautionary instruction was not addressed until the close of the trial evidence, and Elmer did not object to the parts of the instruction that he now criticizes.  As a general rule, "[t]he failure to object to a proposed jury instruction constitutes waiver of any error." *State v. Glenn*, 199 Wis. 2d 575, 589, 545 N.W.2d 230 (1996).

prejudice that substantially outweighs the probative value of the more serious acts. Elmer relies on *State v. McGowan*, 2006 WI App 80, 291 Wis. 2d 212, 715 N.W.2d 631, in which we overturned a circuit court decision to admit other acts evidence. The State counters that Elmer's reliance on *McGowan* is misplaced and that other case law supports the circuit court's decision here.

¶15    We agree with the State, and we conclude that the circuit court's decision is consistent with and supported by *State v. Veach*, 2002 WI 110, 255 Wis. 2d 390, 648 N.W.2d 447, one of the cases cited in the State's brief. We discuss *Veach* first, then turn to *McGowan*.

¶16    In *Veach*, the defendant was charged with two counts of sexual assault of a child based on two separate incidents. *Veach*, 255 Wis. 2d 390, ¶¶1-2. In each incident, the defendant was alleged to have touched the child's vagina or butt. *Id.*, ¶2. The defendant in *Veach* claimed that one of the incidents never happened at all and that in the other incident he had only rubbed the child through a sleeping bag to warm her up. *Id.*, ¶12.

¶17    The circuit court in *Veach* admitted other acts evidence involving more serious allegations of child sexual assault. *See id.*, ¶¶15, 20. The other acts included evidence of incidents in which the defendant attempted to insert his penis into a different child's vagina, ejaculated on her stomach, stuck his penis in her mouth, and ejaculated in her mouth. *Id.*, ¶15.

¶18    The defendant in *Veach* argued that this other acts evidence was unfairly prejudicial because it was so egregious and graphic. *Id.*, ¶90. The supreme court in *Veach* was not persuaded by this argument. *Id.*, ¶91.

¶19 The supreme court in *Veach* determined that the other acts evidence was probative on the questions of whether the charged conduct had occurred, whether the conduct was for the purpose of sexual gratification, and whether it was done by mistake or accident. *Id.*, ¶84. The supreme court acknowledged that the evidence was "graphic, disturbing, and extremely prejudicial," but the court nonetheless concluded that the circuit court's exercise of discretion to admit the evidence was reasonable given the high probative value of the evidence and the greater latitude rule. *Id.*, ¶91.

¶20 A similar analysis applies here. As in *Veach*, the other acts evidence was highly probative. In particular, it was highly probative on the question of whether Elmer acted intentionally and with the purpose of sexual gratification in grabbing A.B.'s butt. As in *Veach*, the other acts evidence here was more serious than the charged incident, thus posing a considerable risk of prejudice. However, following the logic of *Veach*, it was nonetheless reasonable for the circuit court here to conclude that the prejudicial nature of the other acts evidence did not outweigh its probative value, particularly given the greater latitude rule.

¶21 We turn to *McGowan*, the principal case on which Elmer relies. As we now explain, we conclude that *McGowan* is factually distinguishable.

¶22 In *McGowan*, an eighteen-year-old defendant was charged with multiple counts of sexual assault of a child based on allegations that he repeatedly and forcibly assaulted the child over a two-and-a-half-year period, starting when the child was eight years old. *McGowan*, 291 Wis. 2d 212, ¶¶1-8. The allegations included oral sex on the victim, sexual intercourse with the victim, covering the victim's mouth when she screamed, and threatening to kill her. *Id.*, ¶¶4-8. The

defendant in *McGowan* claimed that the victim's story was not credible because her screams would have awakened her brother sleeping nearby. *Id.*, ¶¶3, 11.

¶23 The circuit court in *McGowan* admitted other acts evidence consisting of an incident that occurred when the defendant was ten years old in which he was alleged to have forced a five-year-old child to perform oral sex on him and urinated in her mouth. *Id.*, ¶9. We concluded in *McGowan* that the circuit court erroneously exercised its discretion by admitting this evidence. *Id.*, ¶24.

¶24 More specifically, we concluded in *McGowan* that the other acts evidence lacked probative value because "a single assault, by one young child on another young child, eight years before repeated assaults by an adult on a different child who was three years older than the first victim, together with significant differences in the nature and quality of the assaults, does not tend to make the latter frequent and more complex assaults of [the current victim] more probable." *Id.*, ¶20. We also concluded that "the offered evidence (testimony of forced fellatio, performed by a five-year-old child victim, followed by urination in the victim's mouth) undoubtedly aroused the jury's 'sense of horror' and 'provoke[d] its instinct to punish.'" *Id.*, ¶23 (quoted source omitted). We stated that "[r]evulsion as to this conduct is not significantly mitigated by the fact that McGowan was only ten years old at the time and the event was an isolated incident." *Id.*

¶25 Elmer argues that *McGowan* is factually similar to his case and that, if anything, the facts in *McGowan* were more favorable to the admission of other acts evidence. According to Elmer, the circuit court's decision to admit other acts evidence here was as unreasonable as the admission of the other acts evidence in *McGowan*. We disagree and conclude that Elmer's reliance on *McGowan* is

8

misplaced for two reasons that relate to each side of the balancing test under the third *Sullivan* prong.

¶26 First, the probative value of the other acts evidence in *McGowan* was not as apparent or high as it is here. In *McGowan*, not only did the other acts occur years before the charged conduct when the defendant was a young child, but also, and at least as importantly, the defendant in *McGowan* could not seriously dispute that his charged conduct was intentional and for the purpose of sexual gratification. As noted above, the charged conduct in *McGowan* included oral sex and sexual intercourse. *See McGowan*, 291 Wis. 2d 212, ¶¶4-8. Here, in contrast, the other acts evidence was clearly relevant to assist the jury in resolving the question of whether Elmer acted intentionally and with the purpose of sexual gratification in grabbing A.B.'s butt.

¶27 Second, this court's decision in *McGowan* appears tied to the unusual nature of one of the other acts at issue in that case, namely, the defendant's act of urinating in another child's mouth, and the perception that this act would be especially likely to shock and horrify a jury, resulting in unfair prejudice. There was no similar alleged act here.[5]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] In *State v. Hurley*, 2015 WI 35, 361 Wis. 2d 529, 861 N.W.2d 174, our supreme court characterized the result in *State v. McGowan*, 2006 WI App 80, 291 Wis. 2d 212, 715 N.W.2d 631, as "driven by the difference in the nature of the two sets of acts, and the horrid nature of urinating in a child's mouth." *Hurley*, 361 Wis. 2d 529, ¶92 n. 24.