COURT OF APPEALS
DECISION
DATED AND FILED

March 12, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP2020-CR**

Cir. Ct. No. 2015CF184

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL W. IONETZ,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Jefferson County: BENNETT J. BRANTMEIER and ROBERT F. DEHRING, JR., Judges. *Affirmed*.

Before Graham, P.J., Kloppenburg, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Michael Ionetz appeals a judgment convicting him of 14 counts of possession of child pornography and an order denying his motion for postconviction relief.  On appeal, Ionetz argues that the circuit court erroneously exercised its discretion when it admitted other-acts evidence of the total number of images and videos depicting child sexual exploitation, including the charged images, that were found in a forensic examination of the unallocated space on his computer's hard drive.  We reject Ionetz's argument and affirm.[1]

## BACKGROUND

¶2    The State charged Ionetz with 14 counts of possession of child pornography, as a repeater, contrary to WIS. STAT. §§ 948.12(1m), (3) and 939.62(1)(c) (2023-24).[2]  The charges stemmed from an investigation that was initiated after an agent with the Wisconsin Division of Criminal Investigation (DCI) downloaded files containing child pornography from a peer-to-peer sharing network.  The agent determined that the files came from an IP address that was registered to Ionetz.  DCI agents obtained a search warrant for Ionetz's residence where they seized, among other things, his computer's hard drive.

¶3    DCI agents did not find child pornography when they previewed the hard drive at Ionetz's residence.  However, during a later forensic examination of

---

[1] This case was filed in 2015, and the evidentiary decision at issue in this appeal was made in 2016 by the Honorable Randy R. Koschnick.  After lengthy pretrial proceedings in which the parties stipulated to continuances to allow Ionetz to retain an expert witness, the case was subsequently assigned to the Honorable Bennett J. Brantmeier, who presided over the trial, and to the Honorable Robert F. Dehring, who presided over the postconviction proceedings.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

a replica of the hard drive, a DCI examiner discovered the 14 images that served as the basis for the charges in this case.

¶4      These 14 images were part of a larger set of images and videos of suspected child sexual exploitation, all of which were found on the unallocated space on the hard drive.  As we understand it, the term "allocated space" refers to space on a hard drive on which files are stored and can be accessed by users, and the term "unallocated space" refers to space on a hard drive on which files that were deleted from the allocated space are stored.  Importantly here, a deleted file that was once saved on a hard drive's allocated space will remain on the unallocated space until the file is written over by new data.  Although files on unallocated space cannot be readily accessed or viewed by a user, these files can sometimes be recovered through the process of forensic examination.

¶5      During the pretrial proceedings, the State filed a motion asking the circuit court to allow it to admit other-acts evidence pursuant to the three-part test from *State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998). Specifically, the State sought to admit evidence that DCI found 2,353 images (in addition to the 14 charged images) and 16 videos of child sexual exploitation on the unallocated space on the hard drive.  At a hearing on the motion, the State clarified that it was not asking the court to allow the jury to view any of the additional images or videos; it was just asking the court to allow the witnesses to reference the number of additional images and videos in their testimony.  The State argued that this evidence was admissible for purposes of "context for the alleged offenses" and also to prove Ionetz's "knowledge and absence of mistake or accident … regarding the child pornography found on his computer hard drive."

The State proposed that the court give a cautionary instruction to the jury about how to consider the other-acts evidence.[3]

¶6      During the hearing, Ionetz raised questions about the accuracy of the State's representations about the total number of files containing child sexual exploitation material that were found on the hard drive. After a lengthy discussion, the State proposed to amend its request by reducing the total number of files. The State then filed an amended motion in which it sought to admit evidence that 256 images and 16 videos containing child sexual exploitation material were found on the hard drive.[4]

¶7      At a continued hearing, Ionetz did not challenge that the State's asserted purposes for offering the evidence were permissible purposes, nor that the evidence was relevant for those purposes. *See Sullivan*, 216 Wis. 2d at 772, 783-87 (describing the first two parts of the *Sullivan* test). However, Ionetz asked the circuit court to deny the motion on the ground that the probative value of the evidence was outweighed by the danger of unfair prejudice. *See id.* at 772-73, 789 (describing the third part of the test).

¶8      The circuit court granted the motion. It found that the evidence was offered for a permissible purpose. It also found that "the presence of these [additional] images" on the hard drive was "relevant primarily to whether [Ionetz]

---

[3] The State also filed an other-acts motion with respect to evidence that the DCI agent downloaded three files containing child pornography from Ionetz's IP address. That motion was granted and is not at issue in this appeal.

[4] The State's motion represented that the 256 images were *in addition* to the 14 charged files, but later trial testimony clarified that the 256 images *included* the 14 charged images. Additionally, the State's motion represented that there were 16 video files, but later testimony clarified that there were actually 17 video files on the hard drive.

4

had knowledge" that the charged images were on his hard drive, and also "to a lesser extent … as to whether there's any type of mistake or accident with the items being on the [hard drive] in question," and also to "context." The court acknowledged that there "may be some unfair prejudice given the nature of [the] images and videos," but it determined that the "danger of unfair prejudice is relatively minor," and that the "substantial probativeness outweighs [that] danger." The court confirmed that the State could present the evidence in its case in chief, and it offered to "give a cautionary instruction upon request so that the jury is properly instructed [regarding] how they are to use and consider this evidence of other crimes, wrongs, or acts."

¶9    The case eventually proceeded to a two-day jury trial. During the State's case in chief, the total number of images and video was mentioned on two separate occasions: once in the prosecutor's opening statement, and then several times during the testimony of the digital forensic examiner who conducted the examination in which the files were found.

¶10    Specifically, during his opening statement, the prosecutor informed the jury that agents did not find any child pornography on the hard drive when they previewed it at Ionetz's residence. However, the prosecutor continued, when the "hard drive was further examined [through forensic examination], 256 images[] and 15 videos containing child pornography were found on the … hard drive."[5] The prosecutor also told the jury that the "examination revealed that specific searches for child pornography had been made from [Ionetz's] computer."

_____

[5] The prosecutor apparently misspoke or was misinformed about the facts; later testimony confirmed that the examiner found 17 video files.

¶11 Then, when called as a witness by the prosecutor, the forensic examiner testified that he made a replica of the hard drive using forensic software, he confirmed that it was an exact replica, and he then analyzed the data on the replica. The examiner further testified as follows:

> Q. … During your analysis of [Ionetz's] hard drive, the hard drive we've been talking about, did you locate any images or videos that contained children engaged in sexually explicit conduct?
>
> A. I located 256 picture files, and 17 video files that I believed possibly contained contraband material.
>
> Q. What do you mean by contraband material?
>
> A. Child exploit material.
>
> Q. Would that be consistent with children engaged in sexually explicit conduct?
>
> A. Yes.

The examiner testified that he put the 256 images and 17 videos into a report and provided them to an agent for review, and that the 14 charged images were "part of the 256 images that [he] referenced earlier [in his testimony] that [he] found" during his examination. The examiner also confirmed that he assisted with preparing trial exhibits of the 14 charged images, and that the images depicted in the exhibits were "14 of the 256 images that [he] referenced earlier in [his] testimony [that] contained children engaged in sexually explicit conduct."

¶12 The examiner also provided testimony about how files are stored on hard drives, and how deleted files can be recovered through forensic examination until they are overwritten by new data. The examiner testified that he found the 14 charged files on unallocated space of Ionetz's hard drive, but that the files would have been on allocated space and accessible to a user before they were deleted. And the examiner testified that his analysis revealed that Ionetz had

installed peer-to-peer file sharing programs on his computer, that Ionetz entered search terms associated with child pornography when using those programs, and that Ionetz had opened and then later deleted files on his computer bearing names associated with child pornography.

¶13     After the State rested its case in chief, Ionetz testified for the defense. He denied having possessed child pornography and denied taking any action that would have caused child pornography to be on the unallocated space on his hard drive. He testified that when he purchased his computer it was used and refurbished, and that he did not know who owned it before he purchased it. Ionetz also presented the testimony from a forensics expert retained by the defense.

¶14     During closing argument, the prosecutor referred to the total number of image and video files, and he asserted that the evidence demonstrated Ionetz's knowledge and lack of mistake. Specifically, the prosecutor argued:

> The evidence establishes that [Ionetz] had 256 images and 17 videos containing child pornography on unallocated space on his hard drive.
>
> Those 256 images and 17 videos including the 14 images [c]harged in Counts 1 through 14 were found in unallocated space.
>
> But at one point in time, they were in allocated space on [Ionetz's] hard drive.
>
> And when those images and videos were in allocated space, they were accessible to [Ionetz].
>
> What all this means is that [Ionetz] actively searched for child pornography.
>
> He downloaded child pornography onto his computer.
>
> That downloaded child pornography was initially in allocated space in his computer.

And he, on several occasions, actively accessed the folders with names referencing child pornography.

....

He knew that he had child pornography on his computer.

And he had the ability to … access the child pornography that was in fact on his computer.

And we know he knew that the child pornography was on his computer; not just because he searched for it, but because he deleted it.

¶15 In his closing argument, Ionetz's counsel attempted to cast doubt on the accuracy of the forensic examination, and whether the evidence on the hard drive might have been "contaminated" at some point during the investigation. Counsel also suggested that the State failed to prove that the files were not already on the unallocated space on the hard drive at the time Ionetz purchased it.

¶16 In the course of instructing the jury on the elements of the offense, the circuit court also provided instructions on how to consider the other-acts evidence. Specifically, the court instructed the jury as follows:

Evidence has been presented regarding other conduct of [Ionetz] for which [Ionetz] is not on trial.

Specifically, evidence has been presented that 242 additional images and 17 videos were also located in unallocated space on the hard drive seized from [Ionetz's] apartment.

If you find that this conduct did occur, you should consider it only on issues of [Ionetz's] knowledge, the absence of mistake or accident, and to provide context or background information.

You may not consider this evidence to conclude that [Ionetz] has a certain character or a certain character trait and that [Ionetz] acted in conformity with that trait or character with respect to the offense charged in this case.

8

> The evidence was received on the issue of knowledge, that is, whether [Ionetz] was aware of facts that are required to make criminal the offense charged.
>
> The evidence was also received on the issue of absence of mistake or accident, that is, whether [Ionetz] acted with a state of mind required for the offense charged.
>
> ….
>
> You may consider this evidence only for the purposes I have described, giving it the weight you determine it deserves. It is not to be used to conclude [Ionetz] is a bad person or for that reason is guilty of the offense charged.

¶17    The jury found Ionetz guilty on all 14 counts.

¶18    Ionetz filed a postconviction motion, in which he challenged the circuit court's decision to admit the other-acts evidence regarding the total number of files, and he also raised other issues that he does not renew on appeal. The circuit court denied the motion, and Ionetz appeals.

## DISCUSSION

¶19    "[E]vidence of other crimes, wrongs, or acts is [generally] not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2). In the context of a criminal trial, the reason for this rule is that such evidence has the potential to lead the jury to believe the defendant is guilty for reasons other than the strength of the evidence supporting the charged offense. *See Sullivan*, 216 Wis. 2d at 783. That is, other-acts evidence can cause confusion of the ultimate issue and may lead a jury to find a defendant guilty, not because the jury is persuaded by the evidence of this crime, but rather because the jury believes that the defendant is a person likely to commit such acts or that the defendant has escaped punishment in the past. *See Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967).

¶20    In *Sullivan*, our supreme court set out the analytical framework that governs the admission of other-acts evidence. *See Sullivan*, 216 Wis. 2d 768. First, a court must determine whether the evidence is offered for a permissible non-propensity purpose under WIS. STAT. § 904.04(2). *Id.* at 772. Permissible purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." § 904.04(2). Second, if the evidence is offered for a permissible purpose, it must be relevant for that purpose under WIS. STAT. § 904.01. *Sullivan*, 216 Wis. 2d at 772. Finally, if the evidence is relevant, the probative value of the evidence must substantially outweigh the danger of unfair prejudice, confusion of the issues, undue delay, waste of time or needless presentation of cumulative evidence. *Id.* at 772-73.

¶21    Although *Sullivan* provides the general framework for admitting other-acts evidence, the "greater latitude rule," which allows for more liberal admission of other-acts evidence, applies to each step of the analysis in certain cases, including those that involve child sexual assault. *State v. Davidson*, 2000 WI 91, ¶51, 236 Wis. 2d 537, 613 N.W.2d 606. It is undisputed that the greater latitude rule also applies in prosecutions for possession of child pornography. *See* WIS. STAT. §§ 904.04(2)(b)1.; 939.615(b), 948.12.

¶22    On appeal, we review a circuit court's decision to admit other-acts evidence for an erroneous exercise of discretion. *State v. McGowan*, 2006 WI App 80, ¶15, 291 Wis. 2d 212, 715 N.W.2d 631. We will uphold the circuit court's admission of other-acts evidence if the court reached a reasonable conclusion after reviewing the relevant facts, applying the proper standard of law, and using a rational process. *Id.* And if the court failed to set forth its reasoning, we will independently examine the record and determine if it provides a basis for the court's exercise of discretion. *Sullivan*, 216 Wis. 2d at 781.

¶23 Here, for each of the 14 counts, the State was required to prove that Ionetz "knowingly possessed" the image; that the image "showed a child engaged in sexually explicit conduct"; that Ionetz "knew or reasonably should have known" that the image "contained depictions of a person engaged in sexually explicit conduct"; and that Ionetz "knew or reasonably should have known that the person" depicted in the image "was under the age of 18 years." *See* WIS JI—CRIMINAL 2146A. The State explained that it was seeking to admit the total number of files found on the hard drive, including the 14 charged files, to help prove, among other things, Ionetz's knowledge and lack of mistake.

¶24 Ionetz acknowledges that these are permissible purposes. He further acknowledges that the existence of the additional files on the hard drive's unallocated space was relevant for these purposes—more specifically, that the existence of additional files made it more likely that Ionetz knowingly downloaded the charged files to his computer, and that the charged files did not end up on the hard drive by mistake. Accordingly, Ionetz does not take issue with the circuit court's exercise of discretion with respect to the first two prongs of the ***Sullivan*** test. Ionetz's argument is about the court's exercise of discretion with respect to the third factor—that the court erred when it determined that the probative value of the total number of files was not substantially outweighed by the danger of unfair prejudice.

¶25 We start with probative value. Ionetz argues that the central question here is "how badly needed is the other act[s] evidence," ***State v. Payano***, 2009 WI 86, ¶81, 320 Wis. 2d 348, 768 N.W.2d 832 (citation omitted), and that here, the State did not need the evidence that badly. While the existence of additional files was at least somewhat probative of his knowledge and lack of mistake, Ionetz argues that the evidence was not "highly probative" and the State

11

did not "badly need" it because the State was already charging Ionetz with possessing 14 files containing child pornography. At some point, Ionetz argues, "the number of uncharged files containing child pornography becomes needlessly cumulative." In other words, Ionetz argues, "the State accomplished its purpose" of proving knowledge and lack of mistake with the 14 charged images, and "[t]he fact that there were 256 images instead of 14[] did not make it significantly more likely" that Ionetz knew about the child pornography on his hard drive and that it did not get there by accident.

¶26    Turning to the danger of unfair prejudice, evidence is unfairly prejudicial when it has the tendency to influence the outcome by improper means, or "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Davidson*, 236 Wis. 2d 537, ¶73 (citation omitted). Here, Ionetz argues, the fact that there were so many uncharged files on his hard drive was unfairly prejudicial due to the "highly inflammatory" nature of child pornography. Ionetz notes that jurors were required to view the 14 charged images at trial, which was "undoubtably upsetting," and he contends that learning about the existence of additional uncharged images and videos was "likely to arouse their sense of horror and provoke their instinct to punish."

¶27    The argument that Ionetz makes about probative value—that the State did not "badly need" to introduce the total number of files to demonstrate knowledge and lack of mistake given the number of charged images—has some appeal, and perhaps a different court might have been persuaded to exercise its discretion in another way. However, we will not reverse an exercise of discretion merely because a different court could reasonably have exercised its discretion

differently. *See State v. Morgan*, 195 Wis. 2d 388, 416, 536 N.W.2d 425 (1995) ("[a] [circuit] court possesses great discretion in determining whether to admit or exclude evidence," and "[w]e will reverse such a determination only if the [circuit] court erroneously exercises its discretion"). Here, under the circumstances, we cannot say that the circuit court erroneously exercised its discretion by admitting the evidence for at least the following reasons.

¶28 First, our supreme court has stated that, with respect to balancing probative value against the danger of unfair prejudice in this context, "[c]lose cases should be resolved in favor of admission." *State v. Marinez*, 2011 WI 12, ¶41, 331 Wis. 2d 568, 797 N.W.2d 399 (citing Daniel D. Blinka, *Wisconsin Practice Series: Wisconsin Evidence* § 403.1 at 139 (3d ed. 2008)). That is, "the bias … is squarely on the side of admissibility" because "the [other-acts] statute provides for exclusion only if the evidence's probative value is *substantially outweighed* by the danger of unfair prejudice." *Id.* This may be particularly true in light of the greater latitude rule, which undisputedly applies to this case.

¶29 Second, as Ionetz acknowledges, the circuit court did not err in determining that the total number of files containing child pornography on the hard drive was at least somewhat probative of Ionetz's knowledge and lack of mistake. And contrary to Ionetz's argument, jurors could perceive a meaningful difference between 14 and 256. That is, some jurors might have a reasonable doubt about Ionetz's knowledge when told that there were 14 images on the hard drive, and might believe that the files could have found their way onto Ionetz's hard drive by mistake. Accurate information about the existence of hundreds of additional images on Ionetz's hard drive might eliminate that doubt.

¶30    Third, under the circumstances, we are not persuaded that the circuit court was required to find that evidence of the total number of files created a danger of unfair prejudice.  It is true that being required to view child pornography during a trial is likely to be upsetting to jurors.  Yet, as Ionetz recognizes, it was necessary for jurors to view each of the 14 charged images in order to reach a consensus on the elements of the offense.  Ionetz does not explain how being informed about the total number of files—that there were 256 images and 17 videos, rather than just 14 images—would instill a sense of horror or desire to punish beyond what the jurors would have experienced upon having to view the 14 charged images.  That is, Ionetz does not explain how the other-acts evidence could have persuaded jurors to disregard the jury instructions, which they are presumed to properly apply, or to find him guilty based on something other than "the established propositions of the case." *Sullivan*, 216 Wis. 2d at 789-90.[6]

¶31    For all these reasons, we conclude that the circuit court did not erroneously exercise its discretion when it admitted other-acts evidence of the total number of images and videos, including the charged images, that were found in a forensic examination of the unallocated space on Ionetz's hard drive.

*By the Court.*—Judgment and order affirmed.

---

[6] The State also argues that the danger of unfair prejudice was mitigated by the circuit court's thorough curative instruction. *State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158.  Ionetz argues that the instruction, which was given after the close of evidence, came too late to mitigate the danger, but this argument does not move the needle for two reasons.  First, as discussed, we have concluded that the circuit court could have reasonably determined that there was not a significant danger of unfair prejudice, and we would have reached the same conclusion even if no curative instruction had been given.  Second, Ionetz could have asked for an earlier instruction if counsel believed it necessary to mitigate the danger of unfair prejudice, but his trial counsel did not do so.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.